Luis A. RODRIGUEZ

v.

Lewis S. TAYLOR et al.

Civ. A. No. 75–1738.

United States District Court,
E. D. Pennsylvania.

Oct. 5, 1976.

Andrew F. Erba, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Mark B. Frost, Asst. City Sol., Dept. of Public Welfare, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Judgment has been entered for injunctive relief for the class, and injunctive relief and monetary damages awarded to the class representative plaintiff in his individual capacity. Plaintiff's counsel has filed a motion for the award of counsel fees.

This action was brought against the City of Philadelphia for its violation of the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, by reason of an imposition by the City of a 41 years-of-age limitation on accepting applications for the position of Security Officer I. The Act expressly provides for an award of reasonable attorney's fees to a successful plaintiff, adopting by reference in 29 U.S.C. § 626(b) the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b). Thus, under *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), attorney's fees may be properly awarded.

Plaintiff has submitted two affidavits in support of the motion for counsel fees. Defendants do not dispute the factual allegations of the affidavits. The affidavits appear to set forth the relevant information that must be taken into account in awarding counsel fees, under the guidelines of *Lindy Bros. Bldrs., Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). The affidavits itemize the dates, hours, nature of work and services, and identification of personnel that performed attorney services on behalf of plaintiffs. Mr. Erba and his lawyer assistant, Sheryl Dicker, and a law student, Ricardo Cuevas, all of whom performed legal services for plaintiff in this litigation, are employees of Community Legal Services, Inc. (CLS), a publicly funded agency that provides civil legal services for certain qualified indigent persons. One of the affidavits sets forth Mr. Erba's annual salary of $17,800.00 and Sheryl Dicker's of $13,500.00. Ricardo Cuevas receives $150 per week of which $10 per week is paid by CLS and $140 is paid by the University of Pennsylvania under a "work-study" program.

Although plaintiff's counsel suggests in the brief that *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 374 (8th Cir. 1974), and *Hodgson v. First National Savings and Loan Association*, 455 F.2d 818, 820 (5th Cir. 1972), indicate the propriety of an award of attorney's fees to the Department of Labor, I do not so interpret those cases, which merely make passing reference to the statutory language providing for attorney's fees. Neither counsel has cited any case directly on point as to whether CLS is entitled to receive attorney's fees. I conclude that an award of such fees to CLS is appropriate.

■ The Act utilizes mandatory language. 29 U.S.C. § 216(b) states: "The court . . . shall . . . allow a reasonable attorney's fee . . . ." Thus the court would appear to have no discretion to deny such fees. *See Wright v. Carrigg*, 275 F.2d 448 (4th Cir. 1960). Likewise, it is of no moment that the plaintiff himself may not owe or otherwise be obligated to pay counsel an attorney's fee, because the statute provides the attorney with a direct interest. In *Maddrix v. Dize*, 153 F.2d 274, 276 (4th Cir. 1946), the court stated:

> There is no merit in the suggestion that the present appeal must fall because the right to the fee does not belong to the attorney but to the client who in this case did not join in the petition for the additional allowance. The Act endows the attorney with a direct interest in the fee . . . . .

■ There is no logical reason to lessen defendant's burden simply because an indigent plaintiff obtains representation by an entity such as CLS. The extent of defendant's liability should not depend upon the ability of plaintiff to hire private counsel. Because CLS is publicly financed, reimbursement to it for the time and effort its attorneys and staff expended in vindicating the rights of plaintiff individually and the plaintiff class is all the more compelling. By awarding reasonable fees to CLS, its limited resources will be increased to expand its present services, or conversely, the same services may be rendered with less expenditure of public funds. In either event the public benefits, and at no greater expense to defendants than if plaintiffs had privately retained an attorney.

This is not to suggest that CLS should engage in litigation that by statute or otherwise is normally fee generating. That is a delicate matter, not presently before me,

for resolution between the private sector of the bar and CLS. The record in no way suggests that CLS failed to follow its routine procedures in attempting to encourage private representation for plaintiff and the plaintiff class. Private attorneys apparently lacked interest. This alone suggests that plaintiff's counsel undertook difficult litigation.

■ Because any award of attorney's fees will go to CLS, the amount to be awarded is more complicated than if an award was to be made to a privately-retained attorney. Should the award be strictly one of reimbursement for the salaries paid to the attorneys, or should fees be awarded on the same basis as if the attorneys were in private practice? Without any case law for guidance, I see no reason for applying a different standard in awarding attorney's fees to a quasi-public legal services program such as CLS.

The *Lindy Bros.* case, *supra*, sets forth the guidelines for a district court in determining allowable attorney's fees. Those guidelines are:

1. Computation of hours spent by the attorneys; how many, in what manner, and by whom.

2. Valuation of services rendered, including in class actions an attempt to identify, if feasible, the hours spent as those benefitting the individual client, the unrepresented claimants, or both.

3. Fixing a reasonable hourly rate for time spent, both as to personnel utilized and their activities.

4. Consideration of the contingent nature of success, *i.e.*, whether there should be an increased allowance to reflect the risk taken that there would be no recovery.

5. Evaluating the services rendered in terms of their quality.

These matters insofar as applicable will be separately considered.

1. Hours spent.

The affidavits set forth that Mr. Erba spent 77 hours "office time" and 12 hours "court time." Although a different rate of hourly charge is often made for "in court" as opposed to "office time," I find no practical reason to differentiate in this case. Possibly, to some attorneys, "in court" time requires more undivided concentration. To others, "in court" time in actual trial may be less tedious and no more difficult than "office time." Although a skilled trial attorney might well feel entitled to charge a greater hourly rate for "in court" time, I suspect the difference arises more from a vague subconscious comparison with the British division of legal services between barristers and solicitors. Another reason for charging more for trial time may be a genuine apprehension with which many extremely capable lawyers face a court trial.

2. Valuation of services rendered.

The individual plaintiff was awarded $27,537.40 plus, by way of equitable relief, the possibility of being employed in the future as a Security Officer I. The plaintiff class will now be able to compete on an equal basis with younger applicants for the position of Security Officer I. Whether any of the plaintiff class will in the future ever be employed is speculative, but assuring the class members of their right to apply on an equal footing is of concrete value to them, even though such assurance cannot be monetarily valued.

3. A reasonable hourly rate or rates.

This, multiplied by the hours of work, appears to be the "lodestar" of any fee determination. In many cases this determination may easily be made, but where, as here, the attorneys are employees of a quasi-public agency, a reasonable hourly rate is difficult to compute unless calculated on the sole basis of their salaries. Mr. Erba's annual salary is $17,800.00. Sheryl Dicker is paid $13,500 per year. The law student receives $150 per week of which CLS pays $10 and $140 is paid by the University of Pennsylvania under a work-study program. Mr. Erba has four years' experience with CLS; Sheryl Dicker has one year's experience.

The petition requests an hourly "in-court" rate for Mr. Erba of $80 and "out-of-court" rate of $50.00; a rate of $30 per hour for Sheryl Dicker, and $15 per hour for the law student.[1] These amounts appear to be excessive considering (a) the experience of the attorneys, (b) their annual salaries, and (c) comparable attorney's compensation.

■ By way of analogy, Congress has provided a pay scale for attorneys appointed under the Criminal Justice Act to represent indigent defendants in criminal cases and certain other similar proceedings. 18 U.S.C. § 3006A. The rate is $30 per hour "in-court" and $20 per hour "out-of-court" with certain maximum limitations that are flexible.[2] The only qualification is that the appointed lawyers be admitted to the bar. The rates of pay are applicable to private attorneys, as well as "bar associations", "legal aid agencies," and "community defender organizations" that supply representation for indigents. Considering the actual salaries received by the attorneys in this case, the "public interest" nature of the work of CLS and the difficulty of the present litigation, I believe the rates provided by Congress under the Criminal Justice Act to be a fair guide, bearing in mind that the rate was last established in 1974, approximately two years ago.

4. The contingent nature of success.

Based solely on the initial admitted facts, the City, superficially at least, appeared to have been in clear violation of the express terms of the Act. Nevertheless, that portion of the private bar that was contacted was apparently uninterested in undertaking the case, despite the statutory provision for counsel fees in the event of success. This lack of interest may have been due to a variety of factors, but most likely was because of potential problems of litigation in that the prospects of such being "profitable" to a lawyer were less than attractive. Viewed prospectively, however, at the time litigation was instituted, I would have to conclude that the "contingent nature of success" was extremely favorable for obtaining injunctive relief. The prospects of obtaining a substantial monetary award, however, were far less favorable because of uncertain issues as to the measure of damages, which issues are presently on appeal.

5. The quality of the attorney's work.

The quality of the attorney's work was good, and the results to the individual plaintiff and the class plaintiffs, excellent. Nevertheless, the litigation did not involve difficult trial preparation, nor complex legal issues. Thus, the litigation was such that the quality of the attorney's work could be categorized as neither requiring nor being of any greater or lesser degree of skill and diligence than that of normally competent Philadelphia lawyers.

■ The petition seeks compensation as attorney's fees for the services of the law student. Even if it be conceded that the services rendered were of the type normally performed by attorneys, and, if they had been performed by attorneys, would be allowable as attorney's fees, I know of no basis for awarding a monetary sum as attorney's fees for services rendered by a non-lawyer. Whether services rendered by a law student might be claimed as "costs" is not before me. If a lawyer, who hires a law student, is entitled to claim attorney's fees for the law student's work, logically a claim could be made for the so-called "paralegals," and also the skilled legal secretary, who may draft pleadings or otherwise perform other legal-related functions. A

---

1. Simple arithmetic shows that if one works a normal 40 hour work week, 50 weeks of the year, the yearly hours of work is 2,000. At $80 per hour an attorney's annual gross income would be $160,000.00. At $50 per hour, $100,000 and at $30 per hour, $60,000.00. Any of these figures is far above the actual salaries of the attorneys in this case, even allowing for "overhead" expenses that a private attorney would have to pay out of his gross income.

2. Of passing interest, based on a 40 hour week, 50 weeks per year, Congress may be said to have established an "hourly rate of pay" for district judges of $21 per hour, and slightly higher rates for Circuit Court Judges and Justices of the Supreme Court.

private attorney, who is allowed attorney's fees, ordinarily receives a substantial rate of pay in order to cover the expenses of running a law office, including the employment of capable assistants as well as regular office overhead. The same principle, it seems to me, should apply in making an award in this case.

 Taking the foregoing factors into consideration, and based upon the affidavits showing that Mr. Erba and Sheryl Dicker spent a total of 94 hours including both "in-court" and "out-of-court" time, an award of counsel fees of $2,820 will be made. This is based on an average hourly rate of $30.00 neither adding nor deducting for the other factors considered as they appear to balance out equally on the plus and minus side.