**MENTAL PATIENT CIVIL LIBERTIES PROJECT et al.**

v.

**HOSPITAL STAFF CIVIL RIGHTS COMMITTEE, DEPARTMENT OF PUBLIC WELFARE et al.**

**Civ. A. No. 73–1512.**

United States District Court, E. D. Pennsylvania.

Dec. 14, 1977.

982

Herbert B. Newberg, David L. Ferleger, Philadelphia, Pa., for plaintiffs.

Melvin R. Shuster, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

On July 5, 1973, this class action litigation was commenced by the Mental Patient Civil Liberties Project, the Patients Rights Organization, and individual patients and ex-patients of Haverford State Hospital, individually and on behalf of the classes they sought to represent. The plaintiffs sought to enjoin the defendants' allegedly unlawful and arbitrary policies and practices relating to the patients' rights to visit with, contact, get advice from and be provided services by community organizers, citizens and attorneys. The defendants' policies were alleged to be violative of the rights guaranteed to the patients and those who sought to serve them under the First, Sixth, Ninth and Fourteenth Amendments of the United States Constitution. In addition, plaintiffs sought enforcement of contractual rights which provided access to Haverford State Hospital and award of damages and reasonable attorneys' fees.

After an eventful litigation history, highlighted by a denial of plaintiffs' motion for a preliminary injunction and a denial of defendants' motion to dismiss for failure to state a claim, this Court approved a consent decree, submitted by both parties, on April 10, 1975. Subsequently, the plaintiffs filed a motion for attorneys' fees; this motion was denied without opinion. Plaintiffs' motion for reconsideration was denied as this

Court found that the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), precluded an award of attorneys' fees. The Court of Appeals summarily affirmed this Court's decision, 541 F.2d 275 (3d Cir. 1976). Prior to the time when the plaintiffs' filed a petition for a writ of certiorari with the United States Supreme Court from the decision of the Court of Appeals, Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. 94–559, 42 U.S.C. § 1988 *as amended* (hereinafter "Attorney's Fees Act"). In light of the passage of this Act, the United States Supreme Court entered an order on March 21, 1977, granting certiorari, vacating the judgment of the Court of Appeals and remanding the case to the Court of Appeals for the Third Circuit for consideration in light of the Attorney's Fees Act. On remand, after submission of briefs by the parties, the Court of Appeals, on May 31, 1977, remanded the matter to this Court for further consideration in light of the Attorney's Fees Act. Given the directive of the Court of Appeals, this Court must now decide the issue of whether the plaintiffs are entitled to attorneys' fees. After full consideration of the facts and law involved, this Court concludes that the plaintiffs' are, indeed, entitled to attorneys' fees.

To reach this decision several issues have to be addressed. First, the Court must determine whether the consent decree precludes an award of attorneys' fees. Secondly, the Court has to decide whether this case was "pending" on the effective date of the Attorney's Fees Act. Thirdly, the Court must determine whether the Eleventh Amendment acts as a bar to an award of attorneys' fees in this case. And finally, the Court must consider whether the plaintiffs were the prevailing parties in this case and whether, if they were prevailing parties, the Court in its discretion should award attorneys' fees. Each of these issues shall now be considered.

*The Consent Decree*

■ The sixth paragraph of the consent decree which was approved by the Court on April 10, 1975 provides that both parties are to bear their own costs. Defendants argue that this provision bars the plaintiffs from seeking attorneys' fees. When the Court received this consent decree in 1975, it was accompanied by a cover letter from the plaintiffs. In this letter, the plaintiffs stated that the consent decree did not cover the issue of attorneys' fees. Two days later the Court approved the decree. Six days after the Court gave its approval, the defendants sent the Court a copy of a letter addressed to the plaintiffs which stated that the defendants were surprised that the plaintiffs did not believe the consent decree covered the issue of attorneys' fees. Now, two years later, this Court is called upon to interpret the meaning of "costs" as that word is used in the sixth paragraph of the decree.

The Supreme Court has given the following instructions to aid the courts in interpreting consent decrees:

"Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper as with any other contract. Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1970).

As the decree in this case was drafted and signed by the attorneys for the parties, this Court believes it proper to look to the legal definition of the word "costs" at the time when the decree was entered. At that time the word "costs" was not defined so as to include attorneys' fees. When a party was awarded costs, this award would not generally include attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Kansas City Southern Railway Co. v. Guardian Trust Co.*, 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659 (1929). Therefore, as no

reason is found to now impose a new definition upon the word "costs" so as to define it to include attorneys' fees, this Court concludes that the consent decree does not bar the parties from seeking attorneys' fees.

*The Pending Issue*

■ Defendants assert that the Attorney's Fees Act does not apply to this case because the attorneys' fees decisions were rendered by this Court and by the Court of Appeals prior to the effective date of the Attorney's Fees Act. However, while this Court recognizes that this Court and the Court of Appeals decided the attorneys' fees question before the Attorney's Fees Act became effective on October 19, 1976, it is also clear that the Attorney's Fees Act applies to cases pending on its effective date. This case was pending on that date. In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that the Emergency School Aid Act's attorney's fees provisions were to be applied to cases pending on the effective date of that Act. Relying on the reasoning in *Bradley*, the courts which have decided the issue of whether the Civil Rights Attorney's Fees Award Act applies to cases pending on the effective date of the Act have uniformly held that the Act does so apply. *See Wharton v. Knefel*, 562 F.2d 550 (8th Cir., 1977); *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977); *Stanford Daily v. Zurcher*, 550 F.2d 464 (9th Cir. 1977). These courts have found, as does this Court, that the legislative history of the Act makes clear that Congress intended the Act to apply to pending cases. *See* remarks by Senator Abourezk, 122 Cong.Rec. § 17052 (daily ed. Sept. 26, 1972).

■ Given that the Act applies to cases pending on its effective date, the next question that must be answered is whether this case was pending on October 19, 1976. On that date, this Court and the Court of Appeals already had denied the plaintiffs' petition for attorneys' fees. While the plaintiffs had not yet filed their petition for a writ of certiorari to the United States Supreme Court, the time for filing that petition had not yet expired and the plaintiffs, in fact, timely filed their petition on November 24, 1976. Defendants contend that as the plaintiffs had not filed their petition prior to the effective date of the Act, the case was not pending. This Court disagrees with the defendants' position. In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that generally the law to be applied to cases on direct review—or, in other words, pending cases—was the law in effect at the time the reviewing court was deciding the case; the Court distinguished this rule from the rule to be applied in those cases where a final judgment was rendered and was being collaterally attacked because of a change in the law. When final judgments suffer collateral attack, the Court directed that law to be applied was the law as it existed when the final judgment was made. The Court in *Bradley* defined final judgment:

> "By final judgment we mean one where the 'availability of appeal' has been exhausted or lapsed, and the time to petition for certiorari has passed." *Id.* at 711, n. 14, 94 S.Ct. at 2016.

As the time to petition for certiorari in this case had not passed when the Attorney's Fees Act became effective, there was no final judgment. Thus, this Court finds that the case was pending on the effective date of the Act and the Attorney's Fees Act applies to this case.

*The Eleventh Amendment Question*

■ The defendants also contend that as the defendants are state agents, the Eleventh Amendment precludes a recovery by the plaintiffs of attorneys' fees. Again, the Court finds it necessary to reject the defendants' argument. Relying upon *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), defendants argue that as Congress did not explicitly state in the Attorney's Fees Act that attorneys' fees could be recovered against the states and their agencies, Congress had not abrogated

the immunity provided to the states by the Eleventh Amendment. In *Edelman*, the Supreme Court held that the plaintiffs could not recover a retroactive award of damages against the state as there was no Congressional authorization to do so and therefore the immunity conferred by the Eleventh Amendment survived so as to prevent such an award from the state treasury. *Fitzpatrick* made clear, though, that Congress, by virtue of its enforcement powers under § 5 of the Fourteenth Amendment, had the power to abrogate the Eleventh Amendment immunity to allow a recovery against the state if such a recovery would aid enforcement of the substantive provisions of the Fourteenth Amendment. *Fitzpatrick* involved a constitutional challenge to the attorneys' fees provisions of Title VII, 42 U.S.C. § 2000e–5, on the grounds that this provision allowed attorneys' fees to be recovered against the state. The Supreme Court, finding that Congress authorized such a recovery, held that Congress had the power to make the authorization. The question that must be faced in this case, then, is not whether Congress had the power to allow for an attorneys' fee award to be made in this civil rights case, but whether Congress, in fact, made such an authorization.

The Attorney's Fee Awards Act provides, "In any action or proceeding to enforce a provision of sections [1977, 1978, 1979, 1980 and 1971 of the Revised Statutes], title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Pub.L. 94–559, 42 U.S.C. § 1988, *as amended.* Obviously, there is no mention in the statute of a recovery against the state. However, most of the courts that have reached this issue have decided that Congress intended the absolute language of the statute to be absolute, thereby allowing for a recov-

ery against *any* party, and have, therefore held that the congressional intent was to abrogate the immunity of the Eleventh Amendment. *See, e. g., Seals v. Quarterly County Court of Madison County, Tennessee,* 562 F.2d 390 (6th Cir. 1977); *Gates v. Collier,* 559 F.2d 241 (5th Cir. 1977); *Bond v. Stanton,* 555 F.2d 172 (7th Cir. 1977); *Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977). These courts have based their decisions on the clear intent manifested in the legislative history of the Act. As the court in *Bond v. Stanton* noted, Senator Helms proposed an amendment which would have exempted state and local governments from the Act's coverage; however, this amendment was tabled. 122 Cong.Rec. S16432–34 (daily ed. Sept. 22, 1976). The Court of Appeals for the Third Circuit has not yet decided this issue. In this Circuit, the two district courts which have addressed this question have reached different outcomes. Judge Higginbotham in *Meisel v. Kremens,* Civil No. 74–1594 (E.D.Pa. filed August 29, 1977), held that Congress intended the Attorney's Fees Act to reach the actions of the states and to lift the veil created by the Eleventh Amendment. Judge Muir in *Skehan v. Board of Trustees of Bloomsburg State College,* 436 F.Supp. 657 (M.D.Pa. 1977) found an insufficient manifestation of Congressional intent to deny the states the immunity conferred by the Eleventh Amendment. Given the absolute language of the statute and the legislative history behind this statute, this Court joins in the opinion of the majority of courts that have addressed this issue and holds that the Attorney's Fees Act allows for recovery against the state and its agents.

*Awarding Attorneys' Fees Under the Attorney's Fees Act*

■ Finally, this Court reaches the central issues of whether the plaintiffs should be awarded attorneys' fees, and if they should, for which services should attorneys' fees be awarded. First, in order to award attorneys' fees, the plaintiffs must establish that they were the prevailing parties in this case. As already noted, this case

was disposed of by a consent decree. However, the fact that the case was settled, does not preclude the plaintiffs' recovery. See *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir. 1970); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*). When deciding whether a party seeking attorney's fees for its efforts in a settled suit is a prevailing party, the Court must determine whether that party's suit was meritorious and whether the party's efforts achieved some of the benefit sought when bringing suit. *See Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir. 1970). The Court of Appeals in *Kahan* noted that, when a suit becomes moot by reason of a settlement, often the courts must determine whether it was meritorious by asking whether or not it would have survived a motion to dismiss. Applying that standard in this case, it is obvious that the plaintiffs' case met this standard since the plaintiffs successfully defended against a motion to dismiss. The Court must next consider whether the settlement achieved some of the benefits that the plaintiffs sought when they commenced this action. Without reviewing all the allegations in the plaintiffs' complaint, it can be stated that the plaintiffs obtained by the consent decree almost all that they sought in their complaint. Originally, plaintiffs alleged that patients at the hospital were being denied access to attorneys, members of the community and other persons who sought to render them assistance. The consent decree provides that such contact with and assistance from the outside world will be permitted. Although many of the rights recognized in the consent decree were stated to be part of existing policy at the hospital, this policy was formulated after the commencement of this suit; this Court can only conclude that this policy was adopted, at least in part, because of the plaintiffs' suit. For example, an impetus for bringing this suit was a June 23, 1973, directive issued by the director of the Haverford State Hospital which limited the access that the Mental Patients' Civil Liberties Project had to the patients. In that directive the director ordered that the Project would refrain from becoming involved in the internal affairs of the hospital; presumably, this directive included the project's involvement with mental health issues that involved the hospital. The consent decree provides that the patients will have the right to meet with representatives of groups interested in the civil rights of mental patients; apparently, this concession from the hospital's 1973 policy was a product of this litigation. Without reviewing all of the achievements of this litigation, then, the Court finds sufficient reason to conclude that the plaintiffs were the prevailing parties.

 The next question is the question of discretion. Under the Attorney's Fees Act, the Court must determine whether, in its discretion, attorneys' fees should be awarded. However, the general principle in civil rights cases is that unless manifest injustice would result, prevailing plaintiffs should be awarded attorneys' fees. *See Croker v. Boeing Co.*, 437 F.Supp. 1138 (E.D.Pa.1977). Therefore, the plaintiffs will be awarded reasonable attorneys' fees under the Attorney's Fees Act.

 The final question that must be decided is whether the plaintiffs are entitled to recover attorneys' fees not only for their counsel's representation in the main case, but also for their attorneys' representation in the litigation seeking attorneys' fees. While the Court of Appeals for the Third Circuit held that fees may not be awarded for time spent in preparing a fee application where fees are sought from a common fund, *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (*Lindy II*), the fees here would not come from a common fund, but rather from the defendants' pockets under the authority of the Attorney's Fees Act. This Court views this distinction as critical. In *Lindy II*, the Court of Appeals was concerned with taking the benefits achieved by the plaintiffs as a group and distributing it to the attorneys, thereby dissipating the benefits the plaintiffs had gained. In this case, awarding attorneys' fees for counsel's services in pursuing plain-

tiffs' petition for attorneys' fees would take nothing away from the benefits the plaintiffs have achieved, as the attorneys' fees award would be paid by the defendant. Therefore, this Court does not view the *Lindy II* decision as controlling. This Court recognizes that another court in this district in *Commonwealth of Pennsylvania v. O'Neill*, 431 F.Supp. 700 (E.D.Pa.1977), understood *Lindy II* as dispositive of this issue; however, as that court did not elaborate on the reasons for its decision, this Court is not persuaded that *Lindy II* precludes the plaintiffs from recovering attorneys' fees for the successful prosecution of their attorneys' fees claim. Under the Attorney's Fees Act, attorneys' fees, in effect, are promised to plaintiffs with meritorious claims in order not to impose financial disincentives on prospective plaintiffs who must decide whether or not to bring suit. Having prevailing plaintiffs bear the burden of their attorneys' fees would be even more discouraging to the litigation efforts of those prospective plaintiffs who seek as their primary relief something other than monetary damages than to those parties who only seek financial recoveries. If plaintiffs had to bear their counsel fees in the proceedings necessary to recover attorneys' fees, the financial discouragement that was sought to be eliminated by the Attorney's Fees Act would be reintroduced into the plaintiffs' calculations when deciding whether to commence suit. Given that this Court does not believe that this was the intent of Congress, this Court finds that in this type of case, where attorneys' fees are not being awarded from a common fund, the plaintiffs are entitled to attorneys' fees for services rendered in seeking attorneys' fees in the main case. Other courts that have decided this issue agree with this Court's position. *See, e. g., Rosenfeld v. Southern Pacific Co.*, 519 F.2d 527 (9th Cir. 1975); *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534 (5th Cir. 1975).

Having decided that the plaintiffs are entitled to recover attorneys' fees, this Court will refrain from deciding the amount of the award in this case until after the parties have had a brief time for discovery on this issue. After discovery is concluded, the parties will be invited to file supplemental briefs, if they deem it necessary, on the proper computation of the attorneys' fees award. The Court will render its decision based upon these briefs unless it deems a hearing necessary; if such a hearing is necessary, the parties will be so notified.

### ORDER

AND NOW, to wit, this 14th day of December, 1977, it is hereby ORDERED that plaintiffs are entitled to recover reasonable attorneys' fees in this case, and that this award includes recovery of attorneys' fees necessary for successful prosecution of their attorneys' fees claim. It is further ORDERED that discovery will proceed on the question of the amount of compensation the plaintiffs are entitled to recover as reasonable attorneys' fees and such discovery will be completed by January 2, 1978. Parties may submit supplemental briefs concerning their assessment of what amount should be awarded as attorneys' fees by January 15, 1978. A hearing on this issue will be scheduled if the Court deems it necessary.

AND IT IS SO ORDERED.