**Ralph WHITE et al.**

v.

**Frank S. BEAL et al.**

Civ. A. No. 75-11.

United States District Court,
E. D. Pennsylvania.

March 10, 1978.

---

R. Michael Kemler, Philadelphia, Pa., for plaintiffs.

Axel Shield, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

The plaintiffs, having prevailed on the merits, now seek to recover their attorneys' fees. Before determining whether the amount they have requested is reasonable and justified, it is necessary to determine whether there exists a basis for allowing an award of attorneys' fees to the prevailing litigant in a case of this nature.

### I. *Procedural Background*

The plaintiffs brought this civil rights class action pursuant to 42 U.S.C. § 1983 against the state officials who were responsible for administering Pennsylvania's federally funded medical assistance program. They claimed that the defendants' refusal to provide them eyeglasses pursuant to Pa. Stat.Ann. tit. 62, § 443.4, DPW–Pa. Manual §§ 9740 and 9743 which approved the dispensing of eyeglasses only to those eligible welfare recipients who suffered from an eye disease or pathological disorder, violated the due process and equal protection clauses of the fourteenth amendment. In addition, plaintiffs asserted a pendent federal statutory claim alleging that the state

statutory scheme was in conflict with the Social Security Act, 42 U.S.C. § 1396, *et seq.,* and the regulations promulgated thereunder, 45 CFR § 249.10, *et seq.,* and was therefore in violation of the supremacy clause of Article VI of the United States Constitution. Because the constitutional claim satisfied the substantiality doctrine of *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), pendent jurisdiction was exercised over the statutory claim.

The case was certified as a class action, the class consisting of

all Pennsylvania recipients of medical assistance for whom eyeglasses are medically necessary in the judgment of a physician skilled in diseases of the eye or an optometrist, and who have been or will be denied authorization by the Pennsylvania Department of Public Welfare, pursuant to the Department of Public Welfare Manual §§ 9740 and 9743 to receive eyeglasses in that defendants provide eyeglasses only to persons with eye disease or pathology and deny them to persons whose need for eyeglasses is due to reasons other than disease or pathology.

Resolution of the statutory claim resulted in summary judgment in favor of the plaintiff class and the defendants were permanently enjoined from applying the restrictive state regulations. *White v. Beal,* 413 F.Supp. 1141 (E.D.Pa.1976), *aff'd,* 555 F.2d 1146 (3d Cir. 1977).

At the time the instant petition was filed, the plaintiffs would arguably have been entitled to attorneys' fees only under the common benefit fund exception to the "American Rule" which generally precludes an award of attorneys' fees to the prevailing litigant. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This theory, however, raised certain difficult problems because no common fund, monetary or oth-

erwise,[1] the right to which would accrue to a definable class, had been created as a result of this litigation. Despite plaintiffs' arguments to the contrary, there seemed to be no way to spread the cost of counsel fees among those benefited from the litigation, which is the justification for the common fund exception. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Furthermore, even if an award of counsel fees were justified under the common benefit exception, the eleventh amendment still presented a formidable obstacle to the recovery of such an award from these defendants.

While this petition was pending, Judge Newcomer denied an award of attorneys' fees in a similar case, on the grounds that the common benefit exception as clarified in *Alyeska, supra,* does not apply to a noneconomic benefit from which no monetary fund is created. *Mental Patients Civil Liberties Project v. Department of Public Welfare,* Civil Action No. 73–1512 (E.D.Pa. filed Aug. 18, 1975). Because of the similarity of the issues, decision on the instant petition was stayed pending disposition of the appeal taken from that decision. On September 7, 1976, the Court of Appeals for the Third Circuit affirmed, by judgment order, the decision of Judge Newcomer for the reasons stated in his memorandum. *Mental Patient Civil Liberties Project v. Dept. of Public Welfare,* 541 F.2d 275 (3d Cir. 1976). Thereafter, the United States Supreme Court granted plaintiffs' petition for a writ of certiorari, vacated the judgment order of the court of appeals and remanded the case for further consideration in light of the Civil Rights Attorneys' Fees Awards Act of 1976, Pub.L. 94–559, § 2, Oct. 19, 1976, 42 U.S.C. § 1988. *Mental Patient Civil Liberties Project v. Dept. of Public Welfare,* 430 U.S. 925, 97 S.Ct. 1542, 51 L.Ed.2d 769 (1977).

---

1. Assuming an actual monetary fund is not required in a case of this nature, *see Merola v. Atlantic Richfield Company,* 515 F.2d 165 (3d Cir. 1975), there is some question as to whether a common benefit has accrued to the class as a result of this litigation. The judgment entered

left open the possibility for the Commonwealth to discontinue the eyeglass program entirely if it chose to do so. The Commonwealth has recently, in fact, discontinued the program and, it is at least arguable, that the class has received no benefit as a result of this litigation.

Consideration of the applicability of that act to the *Mental Patient* case was recently decided by Judge Newcomer having been remanded by the court of appeals, *Mental Patient Civil Liberties Project v. Dept. of Public Welfare,* 556 F.2d 567 (3d Cir. 1977), for his initial determination. *Mental Patients Civil Liberties Project v. Hospital Staff Civil Rights Committee,* 444 F.Supp. 981 (E.D.Pa. Dec. 14, 1977). Both parties in this case have briefed the question of that Act's application to this litigation and I see no reason to further delay the final disposition of this petition.

## II. *Civil Rights Attorneys' Fees Awards Act of 1976*

Defendants' opposition to this petition is centered on three arguments. First, they contend that the Act does not apply to cases pending on the date of its enactment. Second, they argue that even if the Act were applicable to pending litigation, it does not apply to this particular case because plaintiffs, having succeeded only on their pendent statutory claim, are not the prevailing litigants in an action to enforce one of the civil rights statutes to which the Act applies. Finally, they argue that the eleventh amendment still stands as a bar to any monetary recovery payable out of the state treasury. These arguments will be considered *ad seriatim.*

### 1. *Pending Cases*

At the time this Act became effective, the order granting plaintiffs' motion for summary judgment was on appeal but the plaintiffs' petition for attorneys' fees was pending before this court pursuant to the order of June 23, 1976, staying resolution of the petition until decision on the appeal in the *Mental Patient* case.[2]

Although the Act does not expressly provide for its application to pending litigation, the legislative history clearly suggests that it does. The report of the House of Representatives states:

In accordance with applicable decisions of the Supreme Court, the bill is intended to apply to all cases pending on the date of enactment as well as all future cases. *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

H.R.Report No. 94–1558, 94th Cong., 2d Sess. p. 4, n. 6 (1976). In addition the remarks of Senator Abourezk, who managed the bill on the floor of the Senate and Senator Kennedy, 122 Cong.Rec. S 17052 (daily ed. Sept. 29, 1969), as well as Representatives Anderson, 122 Cong.Rec. H 12155, and Drinan, *id.* at H 12160 (daily ed. Oct. 1, 1976), state that the intent of Congress is that the Act be applied retroactively to pending cases.

There are no special circumstances which would render an award of attorneys' fees in this case unjust or inappropriate. *See Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The defendants were or should have been aware that award of attorneys' fees might be appropriate in the event the plaintiffs should prevail on the merits. The passage of this Act merely substantiated that possibility. Moreover, the amount involved in this case is not so substantial as to suggest that defendants would have followed a different course in litigating this action had the potential for such an award been more likely from the outset.

It is also apparent from the legislative history that the purpose of the Act was to provide the "specific authorization required by the court in *Alyeska*", S.Rep.No.94–1011, 94th Cong., 2d Sess., p. 4, U.S.Code Cong. & Admin.News (1976), p. 5912, and close the gap created by that decision whereby the prevailing litigant in a suit brought to enforce the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e *et seq.,* would be entitled to recover attorneys' fees but would not be entitled to the same award in a similar suit brought pursuant to the earlier Civil Rights Acts, 42 U.S.C.

---

**2.** The Act took effect on October 19, 1976. The final order granting plaintiffs' motion for summary judgment was entered on April 21, 1976 and was affirmed by the court of appeals on May 5, 1977. Plaintiffs' petition for attorneys' fees was filed on May 3, 1976.

§ 1981 *et seq.*[3] This purpose is best effectuated by applying the Act retroactively. Otherwise, successful plaintiffs in cases like the instant action would be denied attorneys' fees solely on the basis that the litigation was concluded subsequent to the decision in *Alyeska* and prior to the passage of this Act.

Finally, I note that the few cases which have confronted this question, to date, are in unanimous agreement with the decision to apply this Act to those cases pending on the date of its enactment. *Wharton v. Knefel,* 562 F.2d 550, 557 (8th Cir. 1977); *Gates v. Collier,* 559 F.2d 241, 243 (5th Cir. 1977); *Bond v. Stanton,* 555 F.2d 172 (7th Cir. 1977); *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977); *Stanford Daily v. Zurcher,* 550 F.2d 464 (9th Cir.), *cert. granted,* 434 U.S. 816, 98 S.Ct. 52, 54 L.Ed.2d 71 (1977);[4] *Mental Patient Civil Liberties Project v. Hospital Staff Civil Rights Committee,* Civil No. 73–1512, 444 F.Supp. 981 (E.D.Pa. filed Dec. 14, 1977) (Newcomer, J.); *Meisel v. Kremens,* 405 F.Supp. 1253 (E.D.Pa.1977) (Higginbotham, J.); *Commonwealth of Pennsylvania v. O'Neill,* 431 F.Supp. 700, 703 (E.D.Pa.1977); *Gary W. v. State of La.,* 429 F.Supp. 711 (E.D.La.1977); *Wade v. Mississippi Co-op Extension Service,* 424 F.Supp. 1242 (N.D.Miss.1976).

### 2. *Prevailing Litigant*

■ Defendants urge that the Act be interpreted in such manner as to exclude an award of attorneys' fees in this case because plaintiffs' constitutional claim was never adjudicated. As with defendants' first contention, the legislative history offers persuasive guidance against accepting the narrow interpretation urged by defendants. The House Report states:

**3.** As the legislative history points out, "fees are now authorized in an employment discrimination suit under Title VII of the 1964 Civil Rights Act, but not in the same suit brought under 42 U.S.C. § 1981, which protects similar rights . . . ." S.Rep.No.94–1011, 94th Cong., 2d Sess. p. 4, U.S.Code Cong. & Admin.News (1976), p. 5911.

**4.** One of the three questions presented to the Supreme Court in this petition for certiorari is

To the extent a plaintiff joins a claim under one of the statutes enumerated in [the Act] with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. . . . In some instances, however, the claim of fees may involve a constitutional question which the courts are reluctant to resolve if the nonconstitutional claim is dispositive. . . . In such cases, if the claim for which fees may be awarded meets the "substantiality" test . . . attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact."

(Citations omitted). H.R.Rep.No.94–1558, 94th Cong., 2d Sess. p. 4, n. 7. *See Southeast Legal Defense Group v. Adams,* 436 F.Supp. 891, 894 (D.C.Or.1977).

It was determined by the prior opinion in this case, that plaintiffs' due process claim was not so insubstantial as to foreclose jurisdiction over the pendent statutory claim. *White v. Beal,* 413 F.Supp. at 1150. Following the guidance of *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) and *Westby v. Doe,* 420 U.S. 968, 95 S.Ct. 1385, 43 L.Ed.2d 648 (1975), plaintiffs' statutory claim being dispositive of the entire controversy, the case was adjudicated solely on that basis.

In addition, plaintiffs' statutory and constitutional claims were precipitated by the same state action, the denial of eyeglasses to the financially needy on the basis of etiology rather than medical necessity. The

whether this Act should be applied to services rendered prior to its effective date. Normally, I might consider delaying decision on a question presently pending before the Supreme Court. However, in this case plaintiffs' petition has been awaiting resolution since May 3, 1976. It has already been stayed for a period of time pending review in the *Mental Patient* case and I believe it would be unfair to add any further delay.

case, therefore, falls squarely within the legislative statement quoted above. The non-fee statutory claim was adjudicated pursuant to the court's jurisdiction over the § 1983 constitutional claim and both claims arose out of a common nucleus of operative fact.

Aside from the legislative history, a denial of attorneys' fees on the basis that the constitutional claim was not adjudicated despite the fact that full relief was accorded the plaintiffs on the statutory claim, would only serve to thwart both the judicial policy against unnecessarily deciding issues of constitutional dimension and the purpose for which the Act was passed. *See Seals v. Quarterly County Court,* 562 F.2d 390, 393–394 (6th Cir. 1977); *Bond v. Stanton, supra* at 174; *Lund v. Affleck,* 442 F.Supp. 1109 (D.C.R.I., 1977).

### 3. *Eleventh Amendment*

 The eleventh amendment embodies the constitutional recognition of the states' sovereign immunity and protects the fiscal integrity of the state by prohibiting an award of damages payable out of the state's treasury.[5] *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The eleventh amendment's cloak of immunity is, however, now subject to qualification by legislative action taken pursuant to the enforcement provisions of the subsequently ratified fourteenth amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

 In *Bitzer, supra,* the Supreme Court upheld an award of back pay and attorneys' fees in an action against a state for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Court held that legislation enacted pursuant to

the power granted Congress by the enforcement provisions of § 5 of the fourteenth amendment may supersede the states' eleventh amendment immunity. The controlling factor in determining whether such legislation does, in fact, abrogate the states' immunity is whether Congress intended and authorized an award of damages to the prevailing plaintiff in a permissible action against a state. *Bitzer,* 427 U.S. at 452, 96 S.Ct. 2666. Essentially the question presented here is whether, given Congress's power to authorize monetary awards against a state when necessary to enforce the provisions of the fourteenth amendment, it intended to exercise that power when it enacted this statute.

The legislative history shows that Congress passed this legislation pursuant to the enabling clause of the thirteenth and fourteenth amendments, S.Rep.No.94–1011, 94th Cong., 2d Sess. p. 5, U.S.Code Cong. & Admin.News (1976), p. 5908, and intended or at least assumed that it applied to the states. *See* H.R.Rep.No.94–1558, 94th Cong., 2d Sess. p. 7; Remarks of Representative Drinan at 122 Cong.Rec.H. 12160 (daily ed. Oct. 1, 1976). The few cases which have considered Congress's intent with regard to this aspect of the statute have found that the legislative history was sufficiently explicit to constitute the authorization required by *Bitzer* to allow an award of attorneys' fees against state officers sued in their official capacity. *Seals v. Quarterly County Report, supra* at 394; *Gates v. Collier, supra* at 242–243; *Bond v. Stanton, supra* at 174–175; *Rainey v. Jackson State College, supra* at 675–676; *Finney v. Hutto,* 548 F.2d 740 (8th Cir.), *cert. granted,* 434 U.S. 901, 98 S.Ct. 295, 54 L.Ed.2d 187 (1977);[6] *Mental Patient Civil Liberties*

---

5. Although the state is not a named defendant and the state agencies were dismissed from this action, *White v. Beal,* 413 F.Supp. at 1150, the individual defendants were sued in their official capacities as state and county officers. As such, an award of attorneys fees would still have an impact upon the state treasury sufficient to permit these defendants to exercise the Commonwealth's eleventh amendment immunity. *Edelman v. Jordan,* 415 U.S. 651, 663, 94

S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

6. One of the questions presented to the Supreme Court in this petition for certiorari is whether the eleventh amendment absolutely bars an award of attorneys' fees, pursuant to this Act, payable out of the state treasury. For the reasons stated in note 4 *supra,* I decided not to stay decision on this issue.

*Project v. Hospital Staff Civil Rights Committee, supra*; *Meisel v. Kremens, supra*; *Gary W. v. State of La., supra* at 712–713; *Wade v. Mississippi Co-op Extension Service, supra* at 1254–1255.

The only case to date, which has held otherwise, is one of the three cases on point decided in this Circuit. *Skehan v. Board of Trustees of Bloomsburg State College*, 436 F.Supp. 657 (M.D.Pa.1977). In that case, the court refused to subject state officials to an award of attorneys' fees absent express language in the statutes, authorizing such an award. Refusing to find sufficient authorization in the legislative history, the court, distinguished *Bitzer* on the grounds that the Equal Employment Opportunity Act of 1974 expressly amended Title VII to permit actions against state employers for back pay and attorneys' fees in employment discrimination suits.

■■■ I agree with Judge Muir that abrogation of the eleventh amendment should not be read lightly into a Congressional enactment. However, a review of the legislative background of this particular Act leads to the conclusion that it was clearly the intent of Congress to authorize an award of attorneys' fees to a prevailing plaintiff in a suit brought against state officials to enforce the provisions of the earlier Civil Rights Acts, 42 U.S.C. § 1981 *et seq. See* S.Rep.No.94–1011, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin. News, p. 5913 (1976); H.R.Report No. 94–1558, 94th Cong., 2d Sess., p. 7 n. 14 (1976).[7] Ignoring this legislative history would, I believe, limit the decision in *Bitzer* beyond that intended by the Court. The intent of Congress is sufficiently clear and unambiguous to satisfy the authorization required by *Bitzer*. Furthermore, a cause of action pursuant to § 1983 requires state action which in the majority of such cases is sup-

plied by the fact that the named defendants are state officials acting on behalf of the state. *Bond v. Stanton*, 555 F.2d at 174. The purpose of the Act would be all but obliterated, if it were construed to allow an award of attorneys' fees only in those relatively few cases wherein the named defendants are solely private entities.

■■■ As the defendants correctly point out, a state and its agencies and municipalities are not "persons" within the meaning of § 1983 and are not therefore subject to liability for violations of that section. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, defendants' reliance upon that principle as the gravamen for their argument that Congress misconstrued the decision in *Bitzer* fails to take into account that state officials are "persons" within the meaning of § 1983 and are, therefore, subject to liability for actions in violation of that section.[8] The named defendants were proper parties in this § 1983 action and Congress properly relying upon the holding in *Bitzer*, authorized an award of attorneys' fees in an action brought to enforce the provisions of that section despite any impact such an award may have upon the state treasury.

#### 4. Community Legal Services

■■■ Defendants' contention that Community Legal Services (CLS), as a publicly funded organization, established for the purpose of providing free legal services to the financially needy, is not entitled to recover attorneys' fees is rejected for the reasons stated in *Rodriguez v. Taylor*, 420 F.Supp. 893 (E.D.Pa.1976), *aff'd in part* 569 F.2d 1231 (3d Cir. December 27, 1977); *see Lund v. Affleck, supra*.

7. Deciphering Congressional intent by implication is fraught with uncertainty. However, I note that Senator Helms proposed an amendment to this Act which would have expressly excluded the states from its application and this amendment was tabled. 122 Cong.Rec. § 16434 (daily ed. Sept. 22, 1976). *See Bond v. Stanton*, 555 F.2d at 174.

8. The defendants argue that *Bitzer* does not apply and that Congress incorrectly relied upon that decision, because the 1972 amendment to Title VII, with which *Bitzer* was concerned, expressly authorizes suits directly against the state as an employer whereas the state cannot be a defendant in § 1983 action.

### III. *Reasonable Attorneys' Fees*

■ The Senate Report suggests that the proper standards to apply in determining a reasonable fee in cases of this nature, are those which were applied in cases such as the *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974). S.Rep.No. 94–1011, 94th Cong., 2d Sess. p. 6, U.S.Code Cong. & Admin.News (1976), p. 5913. That case applied the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), within the framework suggested by *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*).

Following the course outlined in *Zurcher* and the dictates of *Lindy I* and *Lindy II*,[9] the following factors will be considered in reaching a reasonable award of attorneys' fees in this case:

1. The actual amount of time devoted to the litigation. The number of hours spent, by whom and in what manner.

2. A determination of a reasonable hourly rate for the time and activities performed.

3. The valuation of the services rendered in terms of the quality of the work performed, the contingent nature of success and the resulting benefits to the individual plaintiffs and class members.

The determination of the first two factors constitutes the "lodestar" from which additions and subtractions can be made dependent upon the variables in the third factor. *Lindy I and II, supra; Rodriguez v. Taylor, supra.*

### 1. *Hours Devoted to the Litigation*

The petition [10] submitted by Mr. Kemler of CLS states that a total of 303 hours were spent on this litigation, 301 of which were spent out-of-court and the remaining 2 hours in court. According to the petition the time was spent in the following manner: 6 hours interviewing the individual and intervenor plaintiffs; 18 hours in consultation with associate counsel, opposing counsel and expert witnesses; and 277 hours for the research preparation and filing of the complaint and various motions and responses required by the litigation. Subsequent to the filing of this petition, plaintiffs' counsel filed a supplemental affidavit which updates the original petition and requests compensation for 107 additional hours expended by counsel for the preparation of appellate briefs and argument before the Third Circuit Court of Appeals and supplemental memoranda requested by this court on the question of the proper application of the Civil Rights Attorneys' Fees Awards Act to this litigation.[11]

---

**9.** *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976).

**10.** The petition sets forth the number of hours devoted to the litigation, the work performed and the name of the attorney who performed it. The hourly rate requested is forty dollars ($40) office time and sixty dollars ($60) court time. The defendants have objected strenuously to any award of attorneys' fees but they have not objected to the number of hours set forth in the petition or the reasonableness of the rate requested. The petition satisfies the basic requirements of *Lindy I* although I note that it falls somewhat short of the procedure suggested by the court in *Merola v. Atlantic Richfield Company*, 515 F.2d at 167 (n.2) (3d Cir. 1975).

**11.** According to counsel's affidavits, 42 of these 410 hours were spent preparing memoranda relevant to the fee application. *Lindy II, supra* at 110–111 held that no award should be permitted for time spent in the preparation and

litigation of the prevailing party's petition for attorneys' fees. The award of attorneys' fees in that case, however, was a common fund rather than statutorily authorized award and the basis for the court's holding was that time spent in preparation of the fee petition would not inure to the benefit of the fund and would, therefore, not serve the policy behind the common fund doctrine. These statutorily authorized fees, however, are payable by defendants and serve the dual purpose of encouraging the prosecution of meritorious civil rights litigation and punishing those defendants who are found to have violated these important rights. *See, e. g., Prandini v. National Tea Company*, 557 F.2d 1015, 1020 (3d Cir. 1977). Recovery for time invested by counsel in preparation of the fee application would serve to effectuate these policies. *Mental Patient Civil Liberties Project v. Hospital Staff Civil Rights Committee, supra; but see Commonwealth of Pennsylvania v. O'Neill, supra* at 705.

I accept the factual allegations as to the time spent. This amount of time appears to be reasonable in light of the unique issues and the thoroughness exhibited by the briefs submitted by both parties on the various issues. I cannot say that the motions and memorandum in support of or in response to either of the parties' positions were unnecessary, frivolous, in bad faith or for the purpose of delay. Therefore, I accept as correct and reasonable the figure of 410 hours devoted by plaintiffs' counsel to this litigation.

### 2. *Reasonable Hourly Rate*

 The reasonable value of the services rendered by counsel on behalf of the plaintiffs must take into account the cost of those services on the "open market," *i. e.*, the average billing rate of attorneys of similar expertise performing similar work.[12] This determination is usually based upon consideration of the average billing rates of attorneys performing this type of work in litigation of this nature. However, as noted by the Court of Appeals in *Rodriguez v. Taylor, supra*, this determination is complicated by the fact that CLS itself has no billing rate and private attorneys performing this type of work, because of the nature of the work, often request less than their normal hourly rate. *See Rodriguez v. Taylor*, 569 F.2d 1231, at 1248 n. 29 referring to *Commonwealth of Pennsylvania v. O'Neill*, 431 F.Supp. at 707. As a result there is no established market to use as a basic foundation for the purpose of determining the market value of these services.

A review of the lengthy opinion by Judge Fullam of this district, in *Commonwealth of Pennsylvania v. O'Neill, supra*, in which he carefully considered the reasonableness of the fees requested by plaintiffs' counsel, a private law firm, pursuant to the Civil Rights Attorneys' Fees Awards Act, offers substantial guidance for determining the appropriate amount. That opinion suggests that reasonable fees, in litigation of this nature range between approximately ten ($10) to twenty ($20) dollars per hour for paralegal and research assistance work; twenty-five ($25) to forty ($40) dollars per hour for work performed by associates and from fifty ($50) to eighty ($80) dollars per hour for work performed by a senior partner in the law firm.[13]

Although the original petition failed to set forth any information as to the experience levels of the various CLS attorneys involved in this litigation, the supplemental petition establishes the following: Mr. Stephen F. Gold who devoted 73 hours of work to this litigation has been practicing law for seven years and was the Chief of the Health, Education and Welfare Unit of CLS, a position equal to a junior partner in a private law firm; Mr. Jonathan M. Stein who performed only one hour of work in an advisory capacity is an experienced CLS attorney who was Chief of the Law Reform Unit of CLS, a position comparable to Mr. Gold's; Mr. R. Michael Kemler, the CLS attorney responsible for conducting this litigation has practiced law for the past five years and is comparable to an experienced associate with a private law firm; Ms. Linda M. Bernstein has a similar level of experience as that of Mr. Kemler and would likewise be comparable to an experienced associate with a private law firm; and finally, Ms. Suzanne Reilly whose experience is limited to the one year in which she has practiced law and who would be comparable to a junior associate with a private law firm.

Based on this information and utilizing the figures found to be reasonable in *Commonwealth v. O'Neill, supra*, I find the following to be reasonable hourly rates for the

---

**12.** As noted in *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974), an attorney experienced in a particular area of litigation may not be entitled to his/her usual billing rate for work performed in another area with which he/she does not have the same expertise.

**13.** These rates were approximately two-thirds ($\frac{2}{3}$) of the rate normally billed by the law firm for work performed by these various individuals.

work performed by the CLS staff attorneys involved in this litigation:

| Attorney | Total Hours | Rate per Hour | Total |
|---|---|---|---|
| 1. Stephen F. Gold | 73 | $ 50.00 | $ 3,650.00 |
| 2. Jonathan M. Stein | 1 | 50.00 | 50.00 |
| 3. R. Michael Kemler | 316 | 40.00 | 12,640.00 |
| 4. Linda M. Bernstein | 2 | 40.00 | 80.00 |
| 5. Suzanne Reilly | 18 | 25.00 | 450.00 |

### 3. Variables

The sole remaining determination is whether any additions to or deduction from this objective fee are required by an analysis of the more subjective considerations enumerated in the third factor.

### a. Attorneys' Performance

Counsel's performance must be judged in terms of the difficulty in successfully prosecuting the client's claims and the quality of the work submitted to the court during the litigation. These factors are to some extent intertwined. The more difficult the case, the higher quality of work necessary to accomplish a successful outcome.

#### 1. Contingent Nature of Success

Plaintiffs' success in this case, although important in terms of the type of issued presented, was not contingent upon overcoming particularly difficult obstacles. The issues presented by the case were primarily legal questions requiring counsel to focus the courts' attention upon the problem and argue persuasively for the acceptance of their suggested resolution. In this instance, plaintiffs' counsel were aided substantially by the then recent decision of this circuit's court of appeals in *Doe v. Beal*, 523 F.2d 611 (3d Cir. 1975), *rev'd*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977).

Because the controversy was of a legal rather than factual nature, the case did not require trial or trial preparation nor did it require substantial settlement negotiations with the accompanying strategical maneuvering. This is not to suggest that legal as opposed to factual controversies require less diligence or aptitude but only to point out that this case presented problems attendant to only the legal aspect of the litigation process.

### 2. Quality of Counsel's Work

The quality of the attorneys' work on behalf of both the plaintiffs and defendants was quite satisfactory. Both counsel diligently provided their clients with the representation, and the court with the information, which was necessary to efficiently and appropriately resolve the controversy. Nevertheless, as noted, the litigation did not involve difficult trial preparation nor particularly complex legal issues. As a result, the quality of counsel's work was not as important a factor in obtaining a successful outcome to the litigation as it might have been had there been substantial factual controversies or more difficult legal issues.

### b. Benefit to the Individual Plaintiffs and Class Members

The value of these services in terms of the benefit to the plaintiffs and class members is a more difficult consideration in the context of this particular case. On the one hand, plaintiffs now have what they initially sought, an injunction against further operation of the regulations embodied in Pennsylvania Department of Public Welfare Manual, DPW–Pa. §§ 9740, 9743 insofar as such regulations deprived the members of the class from obtaining eyeglasses under the medical assistance program, 42 U.S.C. § 1396. On the other hand, as a result of this litigation, the court has been advised that the Commonwealth has chosen to eliminate eyeglasses entirely as one of the optional services under the program.

It is difficult to assess the effect, if any, that this result should have upon the reasonable value of counsels' services. Certainly in the realm of private litigation, the actual benefit received as a result of resolving the controversy is of utmost importance to the client. Ultimately, however, in the context of litigation of this nature, the Commonwealth's decision to discontinue this program does not detract from the fact that the plaintiffs were able to vindicate their important statutory rights and rectify

certain improper state action. The plaintiffs' success was, therefore, of a fairly valuable nature even if not, ultimately, of a substantial practical benefit.

## IV. *Conclusion*

Having determined that counsels' performance was sufficient to attain a successful outcome in this case but that the litigation did not require extensive trial preparation or involve particularly complex factual or legal issues, I perceive no special circumstances which would warrant an additional award of fees. At the same time, because resolution of the controversy resulted in an important legal determination of dubious practical benefit, no additions to or deductions from the objective fee will be applied on this basis.

Thus, an award of attorneys' fees to the prevailing plaintiffs will be allowed, pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976 in the amount of $16,870.00. This total figure is based on the hourly rates determined as reasonable in Part III, subsection 2 of this opinion multiplied by the number of hours devoted to the litigation by the various CLS attorneys.