Kenneth **MEISEL**, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Jack B. **KREMENS**, M.D., et al., Defendants.

Civ. A. No. 74–1594.

United States District Court, E. D. Pennsylvania.

Aug. 20, 1975.

David Ferleger, Mental Patient Civil Liberties Project, Philadelphia, Pa., for plaintiff.

Norman J. Watkins, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

HIGGINBOTHAM, District Judge.

### INTRODUCTION

In this civil rights action, brought individually and on behalf of all other per-

sons similarly situated,[1] plaintiff Kenneth Meisel challenges the constitutionality of a Pennsylvania statute, § 419(b) of the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4419(b). The statute provides for the summary revocation, by directors of state mental health facilities, of leaves of absence granted to patients in those facilities. The plaintiff seeks declaratory relief, attorneys' fees and costs alleging that the statute, as applied to him and to other members of the class he represents, violated rights secured to them by the Fourth and Fourteenth Amendments to the Constitution. Defendants concede that a violation of plaintiff's constitutional rights did in fact occur, Doc. # 14, at 1, and in response to plaintiff's motion for summary judgment tendered an offer of judgment pursuant to Fed.R. Civ.P. 68, a tender which plaintiff rejected. The parties have stipulated to all of the material facts of the action, so the case is ripe for summary judgment.

For reasons that will hereinafter appear, I have concluded that the application of 50 P.S. § 4419(b) to the instant plaintiff violated rights secured to him by the Due Process Clause of the Fourteenth Amendment, and that said plaintiff is therefore entitled to summary judgment and declaratory relief as a matter of law. In view of this conclusion, I need not, and do not, reach plaintiff's claims that his treatment under this statute also violated rights secured to him by the Fourth Amendment and by the Equal Protection Clause of the Fourteenth Amendment.

## BACKGROUND

On September 6, 1974, counsel for the parties stipulated to, *inter alia*, the following:

1. By order of this Court dated February 6, 1975, plaintiff was given leave to maintain this suit as a class action.

2. By letter dated April 21, 1975, counsel for plaintiff advised the court that plaintiff had by that time been discharged from Haverford

*Jurisdiction and Class Action*

1. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343(3) and § 1343(4), which provides for original jurisdiction in all suits authorized by 42 U.S.C. § 1983 for redress of deprivation under color of state law of Constitutional rights, privileges or immunities or of rights under federal law.

2. Plaintiff's action for declaratory relief is authorized by 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and 42 U.S.C. §§ 1983, 1985 and 1988.

3. Plaintiff sues on his own behalf and on behalf of all others similarly situated. The members of the purported class are all persons who are, have been, or may be involuntarily confined in Pennsylvania state mental health facilities after a revocation of leave by the director of the facility pursuant to § 419 of the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4419.

*Named Plaintiff and Defendants*

4. Plaintiff Kenneth Meisel is twenty-one years of age and is a resident of Delaware County, Pennsylvania and is a citizen of the United States. Meisel is presently involuntarily confined to Haverford State Hospital and has been since about May 31, 1974. He was previously committed to that institution from March 12, 1973 until October 12, 1973, at which time he was released from custody.[2]

5. Defendant Jack B. Kremens, M.D., is Hospital Director of the Haverford State Hospital, Haverford, Pennsylvania and is charged with the administration and supervision of that institution. 50 P.S. §§ 4102 and 4203. He has particular responsibilities under the statute here challenged, 50 P.S. § 4419.

State Hospital. In my opinion, however, plaintiff's release does not render this action moot. He could at any time be recommitted pursuant to the statute challenged in the instant action. See *In re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648, 651–53 (1973) and cases cited therein.

6. Defendant Helene Wohlgemuth is Secretary of the Department of Public Welfare, Pennsylvania. She is charged, under 71 P.S. § 66, with responsibility for exercising the powers and performing the duties vested in and imposed by law on the Department of Public Welfare, including supervision of mental institutions. See 50 P.S. § 4101 *et seq.*

7. Defendant Department of Public Welfare supervises all activities of Pennsylvania mental institutions and has the power to enforce the relevant law and to issue all necessary regulations. 50 P.S. §§ 4201(2), 4202(a).

8. On March 12, 1973, after a hearing, plaintiff was committed to Haverford State Hospital for evaluation pursuant to § 406(a) of the Mental Health and Mental Retardation Act (hereafter, the "Act"), 50 P.S. § 4406(a), by order of the Court of Common Pleas of Delaware County, Pennsylvania. On March 19, 1973, a hearing was held and the court extended plaintiff's commitment pursuant to § 406(b) of the Act, 50 P.S. § 4406(b). At the commitment hearings, it was alleged that plaintiff had behaved assaultively toward his parents. The hospital's psychiatric diagnosis was that of paranoid schizophrenia.

9. This was a civil commitment.

10. On October 12, 1973, plaintiff was discharged from incarceration to long term leave pursuant to 50 P.S. § 4419. The hospital's intention was therapeutic. Recommended by the institution was continued individual therapy and follow up by the community out-patient base service unit. This leave was granted by the defendant hospital director, or his delegate, pursuant to § 419 of the Act, 50 P.S. § 4419. Section 419 of the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4419, reads in full as follows:

(a) the director of any facility, in his discretion, may allow a leave of absence to any person admitted or committed whose condition is such as to warrant the action, for a period not exceeding one year, and upon such terms and conditions as he may pre-

scribe consistent with regulations of the department and the director may renew or extend a leave of absence for an additional period or periods not exceeding one year for each such renewal or extension [period].

(b) leaves of absence may be terminated by the director who may, if necessary, authorize the apprehension and return of the person to whom leave was granted, by any sheriff, constable or police officer who shall apprehend and return such person.

(c) whenever a leave of absence is granted or extended to a period of three years and such leave is not terminated by the director as aforesaid, upon the expiration of such three year period, the person admitted or committed shall be deemed to be discharged.

11. After plaintiff's discharge in October, 1973, he and his family attended out-patient individual and family therapy. Plaintiff continued to live at home with his family.

12. On the evening of May 30, 1974, at about 10 o'clock in the evening, an incident occurred at the plaintiff's home. The facts of the incident are disputed. Plaintiff's father contacted the local police and, pursuant to § 419 of the Act, on May 31, 1974 the hospital director, acting through his agent, authorized the plaintiff's apprehension. Plaintiff was promptly taken by the police to Haverford State Hospital where he was reincarcerated and plaintiff's long term leave was terminated.

13. This termination of leave was based on information received from plaintiff's father. The information was not produced or received at any formal hearing.

14. The defendant hospital director revoked plaintiff's leave and continues to authorize his involuntary detention without having afforded the plaintiff a hearing at which the factual and medical

basis of the revocation could be challenged and determined.[3]

15. The plaintiff's re-incarceration was not done pursuant to the emergency civil commitment provisions of the Act (§ 405, 50 P.S. § 4405).

16. Shortly after his re-incarceration, plaintiff was diagnosed by the hospital staff as "paranoid schizophrenic."

17. Plaintiff has not sought relief in any other court with regard to the matters complained of in this complaint.

## DISCUSSION

There is little need for an extended discussion of the legal principles which control my decision in the instant case. The parties themselves agree that the merits of plaintiff's due process claim are governed by the standards set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Doc. # 9, Plaintiff's Memorandum at 7; Doc. # 14, Defendants' Offer of Judgment at 1. The parties also agree that those standards were violated when the plaintiff was subjected to involuntary reincarceration at Haverford State Hospital on May 31, 1974. Doc. # 9, Plaintiff's Memorandum at 9–10; Doc. # 14, Defendants' Offer of Judgment at 1.

The court, of course, is not bound by what the parties to an action may or may not have agreed to. In this case, as in every case, it is essential that the court independently determine the law which governs the case, then itself apply that law to the facts of the case. I have made such an independent determination and application here, and I have concluded that the principles of due process announced in *Morrissey* do control the instant case, and that the state's treatment of the instant plaintiff pursuant to 50 P.S. § 4419(b) did in fact violate those principles.

At issue in the instant case is not the absolute liberty a person alleged to be mentally ill enjoys prior to his initial commitment to a mental institution,[4] but

rather the "conditional liberty" enjoyed by a person who, after commitment to a mental institution, is then released on parole. Defendants do not argue that this difference absolves the state from the requirements of due process, and I do not see how such an argument, if made, would be persuasive. The liberty at stake in a civil commitment proceeding is as valuable an interest as the liberty at stake in a criminal trial. *In re Ballay, supra,* at 668; *Heryford v. Parker, infra,* at 396; *Lessard v. Schmidt, infra,* 349 F.Supp. at 1090. And the Supreme Court has unanimously held that the "conditional liberty" of the paroled criminal falls within the scope of the Fourteenth Amendment and is entitled to the protection of the Due Process Clause. *Morrissey v. Brewer, supra,* 408 U.S. at 482, 92 S.Ct. 2593. A New York appellate court has recently applied the principles of *Morrissey* to the revocation of the aftercare status of drug dependent persons, *Ball v. Jones,* 43 A.D.2d 281, 351 N.Y.S.2d 199 (1974), and the rationale of that decision has been adopted by a federal district court, *Government of the United States ex rel. Shaban v. Essen,* 386 F.Supp. 1042 (E.D.N.Y.1974). For my part, I cannot see how the "conditional liberty" of the paroled mental patient differs in any significant respect from the "conditional liberty" of the paroled criminal or the paroled drug dependent person. Accordingly, I hold that the former likewise falls within the scope of the Fourteenth Amendment and must be protected by the constitutional safeguards of due process.

Personal liberty is "an interest of transcending value," *Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), and the involuntary civil commitment of a person alleged to be mentally ill necessarily involves "a massive curtailment of liberty," *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). As a result, "there can no longer be any doubt that the nature of the interests involved when a person sought to be involuntarily

---

3. See note 2, supra.

4. The instant plaintiff does not challenge that initial commitment in this proceeding.

committed faces an indeterminate and, consequently, potentially permanent loss of liberty and privacy accompanied by the loss of substantial civil rights (the loss of which frequently continues even if his liberty is restored) is 'one within the contemplation of the "liberty and property" language of the Fourteenth Amendment.' *Morrissey v. Brewer,* supra, 408 U.S. at 481, 92 S.Ct. at 2600." *In re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648, 655 (1973). It is further clear that "involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law. *Specht v. Patterson,* 386 U.S. [605] at 608, 87 S.Ct. [1209], at 1211 [18 L.Ed.2d 326]. Cf. *In re Gault,* 387 U.S. 1, 12–13 [87 S.Ct. 1428, 1435–1436, 18 L.Ed.2d 527] (1967). Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding." *O'Connor v. Donaldson,* 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975) (Burger, C. J., concurring opinion); see *Donaldson v. O'Connor,* 493 F.2d 507, 520 (5th Cir. 1974), *vacated and remanded on other grounds,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir. 1968); *Lynch v. Baxley,* 386 F.Supp. 378, 385 (M.D.Ala.1974) (three-judge court); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1091 (E.D.Wis.1972) (three-judge court), *remanded,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *on remand,* 379 F.Supp. 1376 (E.D.Wis.1974), *remanded,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975); *Dixon v. Attorney General of Commonwealth of Pennsylvania,* 325 F.Supp. 966, 972–73 (M.D.Pa. 1971) (three-judge court).

█ In light of the foregoing discussion, it is clear that the Pennsylvania statute challenged in the instant action, § 419(b) of the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4419(b), cannot withstand constitutional scrutiny. It provides for summary revocation of leaves of absence from state mental health facilities at the discretion of the directors of those facilities. It is thus "almost completely devoid of the due process of law required by the Fourteenth Amendment." *Dixon v. Attorney General of Commonwealth of Pennsylvania, supra* at 972. Accordingly, I hold that 50 P.S. § 4419(b) is unconstitutional, null and void as violative of rights secured to the instant plaintiff and the class he represents by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

One further comment seems appropriate. While the courts have shown increasing and altogether appropriate compassion and concern for the rights of the mentally ill, it is essential that the same courts not allow the pendulum to swing so far that they eliminate the protection which emergency commitment procedures often afford the mentally ill. Thus under no circumstances is this opinion intended to suggest that the safeguards of 50 P.S. § 4405, which provide for emergency commitment of the mentally ill, are legally inappropriate.

## CONCLUSION

In this action, plaintiff has sought a declaratory judgment holding 50 P.S. § 4419(b) unconstitutional. On the uncontested facts of the case, he is entitled to that judgment. I have been concerned, however, lest my decision in this case leave a substantial void in Pennsylvania's otherwise comprehensive statutory scheme for the administration of state mental health facilities.

Thus, to some extent, my delay in ruling on this motion for summary judgment can be attributed to my hope that responsible counsel would jointly propose recommitment procedures that would adequately protect the mentally ill from arbitrary deprivations of liberty, but would not at the same time create a "no man's land" wherein, under the guise of protecting the mentally ill, we deny them the institutional care which at a particular time they might need and

**1258**

which would serve their own best interests. Unfortunately, the parties have been unable to agree on the appropriate relief. Plaintiff has rejected defendants' Offer of Judgment; defendants have rejected plaintiff's proposed consent decree. In view of this failure of counsel to resolve their differences over the relief proper in this case, I have concluded that the interests of all parties would best be served if prior to the entry of judgment counsel for both sides submitted proposed forms of order consistent with this opinion and, in particular, with the principles of due process enunciated in *Morrissey v. Brewer, supra,* and in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1974). Plaintiff shall submit said proposed form of order and any supporting memoranda by September 15, 1975; defendants by October 1, 1975. The matter is hereby scheduled for argument on October 31, 1975 at 2:00 P.M., and counsel shall be prepared to defend the merits of their proposed forms of order at that time. Meanwhile, the execution of this judgment is stayed until further notice.

The foregoing opinion shall constitute the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a).