Kenneth **MEISEL, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Jack B. KREMENS, M. D., et al., Defendants.**

Civ. A. No. 74–1594.

United States District Court, E. D. Pennsylvania.

Aug. 9, 1978.

Amendatory Order Sept. 12, 1978.

David Ferleger, Herbert B. Newberg, Philadelphia, Pa., for plaintiffs.

Melvin R. Shuster, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## AMENDED OPINION AND ORDER

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, Sitting by Designation.

This case was initiated by the filing of a complaint on June 24, 1974, challenging the constitutionality of the former § 419(b) of the Mental Health and Retardation Act of 1966, 50 P.S. § 4419(b).[1] That provision, which allowed summary revocation of leaves of absences granted to patients of state mental health facilities, was found to be violative of plaintiff's due process rights as secured by the Fourteenth Amendment. Consequently, I held that plaintiff, on behalf of himself and all others similarly situated, was entitled to summary judgment and declaratory relief. 405 F.Supp. 1253 (E.D.Pa.1975). At that time, however, I expressed a concern that in granting plaintiff a declaratory judgment "my decision [would] leave a substantial void in Pennsylvania's otherwise comprehensive statutory scheme for the administration of state mental health facilities." 405 F.Supp. at 1257. Both parties were requested to submit pro-

1. § 419 was repealed by the Act of July 9, 1976, Pub.L.No. 817, § 502, 50 P.S. § 7502.

posed forms of order before the entry of a final judgment. No final order was entered because the contested provision of the Mental Health and Retardation Act was repealed as to the plaintiff on March 7, 1977. On June 20, 1977, the action was dismissed as moot because the defendants, in conformity with the repeal of § 419, initiated the termination of all existing long-term leaves and the plaintiff was no longer being deprived of any constitutional right or protection. The question of whether plaintiff was entitled to counsel fees was expressly left open. Finally, on August 29, 1977, I found plaintiff entitled to counsel fees for services rendered up to March 7, 1977, the date this case was mooted as to the plaintiff. Specifically, I held that this case was pending on the enactment of the Civil Rights Attorney's Fees Awards Act of 1976 (Fees Act) and that the Eleventh Amendment did not bar the application of this act to states.[2] At this point, the question of what constitutes a reasonable award of attorney's fees is left for resolution.

## I.

*Standards for the Determination of an Attorney's Fee Award*

 *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) sets forth the guidelines to be used for calculating an award of attorney's fees. First, the district court must objectively determine the market value of the attorney's services which benefited the plaintiffs. As noted in *Lindy I*, "[t]he value of attorney's time is generally reflected in his normal billing rate." 487 F.2d at 167. When an attorney does not have a normal billing rate, *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir. 1977), held that under the Age Discrimination in Employment Act district judges:

. . . [s]hould look to cases of similar complexity, in particular other employment discrimination and related civil rights suits, to determine reasonable hourly rates for counsel who do not have normal private practice billing rates.

569 F.2d at 1250.

Once the billing or hourly rate is found the court should assess whether that rate is reasonable. This determination can be made by taking into account such factors as the attorney's legal reputation, status and the nature of activity which the attorney performed. The reasonable hourly rate multiplied by the number of compensable hours constitutes the "lodestar." Finally, two other factors must be considered to determine the actual fee award: the contingent nature of success and the quality of the attorney's work as reflected by the complexity and novelty of the issues presented, the judge's observations and the amount of recovery obtained. *Lindy I*, 487 F.2d at 168. Any increase or decrease in the "lodestar" award must be supported by specific reasons or findings of fact and, most importantly, adjustments based upon counsel's performance should not be provided as a matter of course, but "the increase or decrease reflects exceptional services only; it may be considered in the nature of a bonus or penalty. The heavy burden of proving entitlement to such an adjustment is on the moving party." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d Cir. 1976) (en banc) (*Lindy II*). Although the *Lindy* cases involved equitable awards from a settlement fund, the rationale of those cases is applicable where the fee award is to be assessed pursuant to the Fees Act against the non-prevailing litigant.[3] Furthermore,

---

**2.** Since the rendering of my decision Judge Newcomer has also held that the Eleventh Amendment posed no bar to an award of attorney's fees against a state under the Fees Act. *Mental Patient Civil Liberties Project v. Hospital Staff Civil Rights Committee*, 444 F.Supp. 981, D.C., filed Dec. 15, 1977. The question is presently before the Supreme Court in *Hutto v.*

*Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L. Ed.2d 522, one of the cases from the Eighth Circuit cited in my prior opinion.

**3.** Most recently, in this district Judge Fullam applied the *Lindy* analysis where no equitable fund was involved. *Commonwealth of Pennsylvania v. O'Neill*, 431 F.Supp. 700 (E.D.Pa. 1977), aff'd, 573 F.2d 1301 (3d Cir. 1978).

because this case involved a period of time in which plaintiff's counsel was not engaged in the private practice of law, the Court of Appeals' decision in *Rodriquez, supra,* is applicable.[4]

*Ferleger's Service and Request for Fees*

In his request for an award of attorney's fees of no less than $35,000 to reflect "the quality of his services, the substantial results achieved and the important public interest objectives served,"[5] David Ferleger has been neither shy nor modest in his assessment of counsel fees due him. Mr. Ferleger's unique entry into private practice and the significant services beneficial to the public interest provided by him must be analyzed in some detail.

With commendable social concerns and determination Mr. Ferleger, while at the University of Pennsylvania Law School, worked on health projects in law, medicine and psychiatry. Because of these special interests immediately upon graduation in 1972 he organized the Mental Patients' Civil Liberties Project of the American Civil Liberties Foundation of Pennsylvania, Inc. (Project). The starting salary was $9,000; in reality, he was counsel, executive director and the predominant voice of the Project. By 1974, when this litigation was initiated, his salary was supposed to be $15,000, though he indicated that on some occasions because of the inadequacy of funds he was not paid his full salary. When he filed this suit on behalf of the project he admits that "I had no expectation or certainty of getting fees. We hoped that maybe some day people would be able to do that, but I certainly didn't know that I would be here today [at a fee hearing]."[6] A fair reading

of the fee hearing testimony reveals that subsequent to law school and during the years in issue, his primary legal concern was to aid the mentally ill and weak who so often get lost in the legal and administrative bureaucracy which is supposed to aid the disadvantaged, but frequently fails to do so. Within a period of a few years, Ferleger has become recognized as an expert on the legal aspects of the mental health field and he has been on the frontier of some of the most significant litigation on this subject in this district.[7]

We are presented in this case with the obligation of assessing an hourly rate for plaintiff's counsel—despite the fact that during most of the time spent on this case he had no hourly rate or private practice. After the "middle" of 1975, Ferleger started to earn additional income as a private practitioner, exclusive of his then salary of "about $16,000 or $17,000" paid by the Project.[8] For routine office work, not involving legal research outside of his office, Ferleger's hourly charge was $50.00. His hourly rate for general legal services, analysis, representation and litigation was $90.00 to $100.00; for representing an individual at a commitment hearing he charged $250 an hour.

During the major part of this litigation, Mr. Ferleger functioned as counsel in a legal and office milieu quite different from the traditional big law firm (high overhead) prototype which has computerized time sheets, extensive billing procedures and palatial suites. Of course, there should be no penalty for those counsel who, because of special devotion to the cause of social justice or limited options, shunt the trappings

---

4. Although *Rodriguez* dealt with ADEA, the Court relied upon closely analogous civil rights litigation and the legislative history of the Fees Act in reaching its conclusion. Thus, the reasoning of that case in regard to the determination of fees for attorneys who do not have normal billing rates should be applicable here.

5. Statement of Time Spent and Costs Incurred at 6.

6. Transcript of fee hearing, January 16, 1978 (N.T.) 11–12.

7. In addition to Mental Patient Civil Liberties Project, *supra,* Ferleger is also involved in another case before this district involving mental patients. *Vecchione v. Wohlgemuth,* 426 F.Supp. 1297 (E.D.Pa.1977), *aff'd,* 558 F.2d 150 (3d Cir.), *cert. denied,* 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977).

8. N.T. 32–33.

of the "established practitioners." Mr. Ferleger and all other single practitioners, small law firm or public interest advocates must always be treated by this court as nothing less than first class citizens of the bar.

With his customary clarity, Judge Van Dusen in *Rodriguez, supra,* set forth the reasons why lawyers employed by public interest groups should not be treated differently from private attorneys in awarding counsel fees.

> The award of fees to legal aid offices and other groups furnishing pro bono publico representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel. Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights . . . Moreover, assessing fees against defendants in all circumstances may deter wrongdoing in the first place. [citations omitted].

569 F.2d 1245. Although Ferleger is not currently employed by the Project because it ceased to function after the summer of 1976, he has assumed all of the obligations and responsibilities incurred by it, including the continuation of litigation. Thus, the policies favoring the promotion of pro bono representation in the enforcement of the civil rights acts as well as an on-going concern for deterring wrongdoing are still operative in this case and lead to an award of counsel fees.

Ferleger indicates that a total of 124.45 hours of legal time was expended on his part. Ferleger did not use any time records or other materials that could constitute record evidence; instead he maintains that his "Statement of Hours and Costs" which lists, with dates, the number of hours with a brief description of the nature of work done reflects his "best possible conservative reconstruction." In describing the method used to recall the hours expended, Ferleger stated:

> I took my file, the correspondence, the court papers, the various notes in front of me and did a couple [of] things. I went through the entire file first to look over it and just get new immersion into it, and then I went over each piece of work and—I don't know how much detail you want me to go into, but what I found as I went over, looked over and analyzed the work I had done, sort of evidenced in my file the work I had done. I could not recall what work was involved and how much time was involved generally, but I could by remembering where the work was done, in which of my couple [of] offices I had since then [and] what other work was going on in other litigation at the time. I could reconstruct the amount of time and effort that was spent on the work that is described in the affidavit.[9]

Defendant raises no objection to the admission of the sworn statement of hours; however, I am making an explicit finding that Ferleger's statement is admissible to show the number of hours he expended as counsel for the plaintiffs. As to the use of reconstructions, the district court in *Lindy II*, 382 F.Supp. 999, 1011 (E.D.Pa.1974), concluded:

> Quite obviously, contemporary time records, kept on a day-by-day basis by individual attorneys, are the most accurate means of establishing the amount of time that a lawyer has devoted to a particular activity. But time records, although highly desirable, are not the only means of proving time spent in a multidistrict litigation of this sort. See *In Re Four Season Securities Laws Litigation*, 59 F.R.D. 657, 664 (W.D.Okl.1973). Although mere estimates of time are not acceptable, an allowance of attorneys' fees may be based on reconstruction, provided that the time records are substantially reconstructed and are reasonably accurate. See *In Re Borgenicht*, 470 F.2d 283, 284 (2d Cir. 1972).

The evidence here discloses that the reconstruction was carefully and accurately

9. N.T. 9.

done. Correspondence, pleadings, briefs and other material in the files were reviewed by an attorney with experience in such matters and a time figure was assigned. Time records of other attorneys were examined, as were court records and transcripts where an attorney had appeared in court. Indeed, from the record as a whole, it appears that petitioner Berger and his firm probably spent more time than they are claiming in connection with this litigation. The district court's findings in *Lindy II* based in part upon a "reconstruction" was affirmed by the Court of Appeals. The reasoning favoring the acceptance of a reconstruction in *Lindy II* is also appropriate here. Ferleger's sworn statement is found to be substantially reconstructed, reasonably accurate, reflects hours I find reasonably necessary in this litigation and may serve as a basis for allowing fees. For example, Ferleger demonstrated at the fee hearing his ability to recall the basis of one entry. Being in a position of not expecting to receive counsel fees when he commenced representing the plaintiff it is not surprising that Ferleger did not maintain time records. Moreover, it is within the interests of justice in this case and the intent of the Fees Act to allow these sworn statements to serve as a basis of demonstrating hours of service. *See Keyes v. School District No. 1*, 439 F.Supp. 393, 411 (D.Colo.1977).

Of the 124.45 hours submitted, 5.75 hours were spent in court; researching, drafting and preparation for court appearances totalled 98.5 hours; the amount of time spent in negotiation, correspondence, reviewing the briefs and other documents from the defendants and the federal government as amicus curiae totalled 16.7 hours; the initial interview with Meisel took 2.5 hours; and his initial examination of hospital records took 1.00 hour. Ferleger stated at the fee hearing that the statement of hours did not include all of the time spent on litigation but represents the "active work that was performed in the furtherance of the case . . . "

### Assessment of Fees from 1974 to June of 1975

In assessing the value of Ferleger's services, which benefited the plaintiff up to June of 1975, and looking to awards granted in comparable litigation of similar complexity, I find plaintiff entitled to an award of $40 per hour. $40 per hour is not a miserly sum, even when considering the accepted competence of counsel. Most important, the legal issues presented in this case were not unusually complex, as illustrated by the parties' agreement to the applicable constitutional standard [10] and their agreement that those standards were violated when Meisel was involuntarily reinstitutionalized. The facts of the case were uncontested and the legal issues were resolved in a motion for summary judgment. Although problems of the nature of relief were of great concern, this issue was not finally resolved because the statute was repealed. No one can dispute the public interests operative in protecting the due process rights of all individuals; however, this public interest does not convert the basic simplicity of the legal issues into a complex maze. Ferleger testified at the fee hearing that his initial research revealed no previously decided case on the revocation of leaves or paroles granted to mental patients; yet, this statement indicates that the factual setting presented was distinguishable from prior procedural due process cases and not that the legal issues were, in fact, novel.

Few cases involving awards of counsel fees have arisen in relatively simple cases. In *Kiser v. Miller*, 364 F.Supp. 1311 (D.D.C. 1973), *aff'd in part, rev'd and remanded in part on other grounds, sub nom. Kiser v. Huge*, 170 U.S.App.D.C. 407, 517 F.2d 1237 (1974), *vacated and reinstated on this point sub nom. Pete v. U.M.W.A. Welfare and Retirement Fund*, 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975) (en banc), the district

---

**10.** Those articulated in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

court, *per* Judge Richey, assessed against the defendant welfare and retirement fund an award of counsel fees based upon an hourly rate of $40.[11] The case was instituted by retired coal miners seeking recovery of pension and welfare benefits. In a prior memorandum opinion, *Kiser v. Carey*, D.C., 353 F.Supp. 736, Judge Richey held that the requirement that the coal miners had to work for an operator signatory to the National Bituminous Coal Wage Agreement of 1950 for at least one year before retirement was invalid. In recognition of several factors, including that the case, decided on a motion for summary judgment, was not complex or novel, required no pretrial discovery and involved relatively little risk, the court concluded that the $40 hourly rate was more than adequate compensation. The panel opinion by the D.C. Circuit Court of Appeals upheld the basic award for counsel fees but disagreed with a particular provision in the district court's order that granted an amount of fees prospectively. The portion of the panel opinion regarding attorneys' fees (which was reinstated by the court en banc) held that the district court's use of a $40 hourly rate did not constitute an abuse of discretion.[12] *Latham v. Chandler*, 406 F.Supp. 754 (N.D.Miss.1976), held that a county registrar could not treat voter registration applications from black students attending Mississippi Valley State University in a different manner than applications of residents in the county in which the school was located. The court stated that the legal issues, "while of undoubted significance to the members of the plaintiff class, were neither unsettled when the complaint was filed nor difficult to demonstrate in the context of the facts." On the other hand, the court recognized the skill, experience and professional ability of counsel. The court awarded counsel fees at an hourly rate of $40 for in-court work and $20 for office work. *Beazer v. N.Y. City Transit Authority*, 558 F.2d 97 (2d Cir. 1977), upheld a base award of $310,000 in a class action challenging the transit authority's refusal to employ any former heroin addict who may have participated in or completed a methadone maintenance program. The court modified the district court's additional award of $50,710 as a premium because, in its view:

> Though complex factual issues were involved, the proof of which required diligent and rather prodigious effort, the legal issues were relatively simple and few. There was no dispute over the governing constitutional doctrines, although their applicability to the facts was a matter requiring considerable persuasive skill.

558 P.2d at 100. There is no indication from the Second Circuit opinion nor that rendered below by Judge Griesa, D.C., 399 F.Supp. 1032, 14 EPD ¶ 7584, how many hours were being compensated for; therefore, I find no indication of what the hourly rate was.[13]

Those cases involving relatively complex legal issues provide variable awards of attorneys' fees. Recently, *Keyes v. School District No. 1*, 439 F.Supp. 393 (D.Colo. 1977), held that hourly rates between $35–$45 could be awarded under the Emergency School Aid Act or the Fees Act depending

---

**11.** Fees were assessed against the defendant on the basis that the defendant acted in bad faith and vexatiously and because the suit conferred a benefit upon the entire fund.

**12.** The court explicitly stated: "we cannot say that [the attorney's] efforts produced any significant public benefit;" however, the court approved of the district court's award of a premium in the amount of 10% of the total hourly compensation on the basis that it provided an incentive for other attorneys to serve as counsel in class actions which involve additional risks if the class plaintiffs do not prevail. 170 U.S.App.D.C. at 423, 517 F.2d at 1254.

**13.** In a memorandum in support of his motion for reconsideration, Mr. Newberg, on behalf of David Ferleger, provided an excerpt of the transcript of the fee award hearing in *Beazer, supra.* Apparently, Judge Griesa awarded fees based upon the hourly rates requested by the attorneys. The lowest hourly rate ($60 for attorneys with two to four years experience) was arrived at by taking into account the years the attorneys had been out of law school during the course of the litigation.

upon the experience, expertise and task performed by each attorney. In reviewing comparable litigation the court noted:

> [E]ach case must be judged on its own merits. Each civil rights case is in some degree different from any other. Thus, when considering awards in other cases one must do so with some circumspection and careful analysis. With that caveat, we note that there has been a wide divergence in court awards . . .

439 F.Supp. at 413. The court notes in a footnote eleven cases with hourly rates awarded in amounts ranging from $5 in *Spero v. Abbott Laboratories*, 396 F.Supp. 321 (N.D.Ill.1975) to $65 in *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444 (C.D.Ca. 1974). *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977), approved of an hourly rate of $50 in a civil rights case brought by a prisoner seeking improvement of his conditions of confinement at a treatment center for the sexually dangerous. The appellants maintained that the district court found the case not "of truly exceptional public importance." The First Circuit, however, approved of the $50 hourly rate, which was used as a yardstick, upon recognition of the important issues involved, the beneficial results peculiarly dependent upon the work of counsel and the commendable diligence and ability shown by counsel.[14]

In this district, Judge Becker in *Entin v. Barg*, 412 F.Supp. 508 (E.D.Pa.1976), approved a settlement in a securities fraud case that would have resulted in an extremely lengthy trial with an uncertain outcome. In a careful analysis, Judge Becker determined class counsels' reasonable hourly rates where the attorneys generally worked on a contingency basis on securities and antitrust matters. The reasonable hourly rates ranged from $40 to $125. The lower rates were assessed for attorneys who had practiced three to four years and the top rate, $125, was assessed for time spent by David Berger, whom Judge Becker recognized as being "widely regarded as one of the nation's foremost plaintiff's class action attorneys in both the securities and antitrust fields." 412 F.Supp. at 517 n. 18.

More recently, in *Commonwealth of Pennsylvania v. O'Neill, supra*, Judge Fullam granted an award of counsel fees under the Fees Act in a case involving "long and complex litigation challenging the hiring and promotional practices of the Police Department of the city of Philadelphia on racial grounds." 431 F.Supp. at 701. Basic fee awards were made to Robert J. Reinstein, at that time a full professor of law at Temple University, on a basis of $40 per hour and to various members of the Drinker, Biddle and Reath law firm at two-thirds their hourly rates. Henry W. Sawyer, III, from the period commencing in 1970, received two-thirds of his hourly rate of $80 which during the litigation increased to $100 and later to $120. Alan Klein, who was an associate when the case began and later became a partner, gave his hourly rate as $45. His hourly rate was increased to $55 and later to $60. The $55 hourly rate was applicable for the period of May 23, 1973, to August 29, 1975. Ms. Amy Davis' applicable rate for the same period of time, May 23, 1973 to August 29, 1975, was $55.[15]

14. Other cases that were regarded as having some degree of complexity are: *McCormick v. Attala County Board of Education*, 424 F.Supp. 1382 (N.D.Miss.1976) (allowed $40 for in-court services, $25 for out of court preparation); *Oliver v. Kalamazoo Board of Education*, 73 F.R.D. 30 (W.D.Mich.1976) (variable rates from $35 to $75 dependent upon experience of counsel); *Payne v. Travenol Laboratories*, 74 F.R.D. 19 (N.D.Miss.1976) (applied customary fee in area of $35–$40).

15. On March 10, 1978, Judge Van Artsdalen rendered an attorneys' fees opinion in *White v. Beal*, 447 F.Supp. 788 (E.D.Pa.1978), a civil rights class action brought pursuant to 42 U.S.C. § 1983. The fees awards were granted to Community Legal Service attorneys who had no billing rate. Relying upon the *O'Neill* analysis, Judge Van Artsdalen determined that a reasonable hourly rate for an attorney could range from $25 to $80, depending upon the experience of an attorney. The reasonable hourly rates were determined as approximately two-thirds of the rate normally billed by a law firm and the reasonable rate for a senior partner could range from $50 to $80 per hour. For the two attorneys whose positions were found to be equivalent to a junior partner in a private law firm, an hourly rate of $50 was used. The lowest rate of $25 was assessed for an attorney who had one year experience in the practice of law.

The above analysis, while lengthy, supports my determination that a $40 hourly rate for services performed by David Ferleger from 1974 to May, 1975 is both comparable to those hourly rates in similar litigation and reasonable. Mr. Ferleger's conduct was commendable and his expertise in mental health law is duly noted. In recognition of the issues in this case in comparison with cases of similar complexity, *Kiser, supra* and *Latham, supra*, and balancing these cases with *Entin, supra*, and *O'Neill, supra*, involving more complex litigation in this area, the $40 figure is appropriate. Ferleger's fee award for the period before June of 1975 is $3,420.

### Post June, 1975 period

As for Ferleger's service after the month of June, 1975, he did have a normal billing or hourly rate in the amount of $90 for work requiring general legal services and $50 for routine work that could be done in his office. Of course, the question of whether the $90 hourly rate is reasonable and should serve as a basis for an award of fees must be determined. I find that the $90 rate is unreasonable. As discussed above, this case presented issues that were not complex and, although research, briefing and preparation were required, the case did not present novel or difficult issues. Thus, in terms of the nature of the activity performed, a lower rate is appropriate. Moreover, a $90 hourly rate is excessive in light of Ferleger's experience and in relationship to awards made in similar litigation. A $60 hourly rate, which I find appropriate in this case, provides reasonable compensation for the services performed after June of 1975. Even if I did not find the $90 hourly rate unreasonable, I would be compelled to adjust any fee award based upon the $90 hourly rate, because of the minimum benefits provided by this lawsuit. After this case was initiated it became clear that even without the rendering of a final judgment there was no probability that the named plaintiff would suffer any further injustice by reason of the application of an unconstitutional statute to him; rather the gravamen of the dispute among counsel centered on what type of relief should be granted to others who might be in plaintiff's class and on the mootness issue.

Ferleger's fee award for the period after June of 1975 is $2,337.

### II.

### Total Costs and Fee Award

Plaintiff has submitted hours for some activities which could be differentiated, such as courtroom appearances, correspondence, interviewing and researching. I find that the more rational course to follow in this case would be to apply the $40 and $60 hourly rates for all services performed during the appropriate time period because these rates will provide reasonable compensation on an average basis.

In his Statement of Time Spent and Costs, Ferleger urges that a multiple of his hourly rate is appropriate and he has listed several cases wherein a multiplier was applied to the attorneys' hourly rate. I find that no multiplier is warranted. I am of the opinion that the quality of counsel's services is adequately compensated for; although counsel has rendered good legal services in his litigation before me, in taking heed of the decision in *Lindy II, supra*, I do not find that counsel has met his heavy burden of proving that his services were exceptional and that a bonus is appropriate.

David Ferleger has submitted an affidavit and statement that costs in the amount of $105.30 were expended for filing, Marshal's Service, procuring a transcript and photocopying. I find these expenses reasonable and necessary for the litigation of the case and recoverable under 28 U.S.C. § 1920.

Under the facts of this case, an award of $5757. plus statutory costs is nei-

ther inadequate nor excessively profitable. As a result of such an award, persons primarily concerned with greater social justice for our citizens will not refrain from taking appropriate legal actions for the weak and deprived, nor will they be economically punished for their social consciousness.

## ORDER

AND NOW, on this 9th day of August, 1978, it is hereby ORDERED:

This court's prior opinion rendered and filed on April 21, 1978, and entered on April 24, 1978, is amended as to all aspects which are inconsistent with this opinion.

As to the amounts previously awarded, they shall be corrected pursuant to Rule 60, Federal Rules of Civil Procedure, so as to show that the award of counsel fees is $5757.00 and the total award of counsel fees plus statutory costs is $5862.30;

Plaintiffs' motion for reconsideration of this Court's Order and Opinion of April 21, 1978 is DENIED; Defendants' motion to Alter or Amend Judgment entered April 24, 1978, is GRANTED and the order awarding plaintiffs' counsel fees plus statutory costs is hereby amended to impose liability upon defendants in their official capacities.

## ORDER

AND NOW, this 12th day of September, 1978, upon consideration of plaintiffs' Motion for Reconsideration of the Amended Opinion and Order of August 9, 1978 and of plaintiffs' representation that the defendant does not oppose said Motion, it is hereby ORDERED that the Motion for Reconsideration is GRANTED and Herbert B. Newberg be awarded two thousand dollars ($2,000.00) to be paid by defendant as compensation for time spent on fee application matters.