212 N.J. Super. 145 (1986)
514 A.2d 85
IN THE MATTER OF THE COMMITMENT OF B.H.
Superior Court of New Jersey, Law Division Camden County.
Decided May 13, 1986.
*146 Theodore S. Novak, for B.H. (Alfred A. Slocum, Public Advocate, attorney).
M. Donald Forman for County of Camden.
TALBOTT, J.S.C.
B.H. is a patient who was conditionally discharged from Camden County Health Services Center, Psychiatric Division, (Lakeland Hospital). In the proceedings before the court, the Public Advocate for Mental Health who represents B.H. contends that her due process rights were violated when she was summarily returned to Lakeland Hospital on March 11, 1986 by *147 her case manager. She decompensated after failing to take her medications, a condition of her discharge. B.H. was conditionally released again at a hearing held approximately two weeks after her return to Lakeland Hospital. The Public Advocate moves to set aside this conditional discharge contending it is void due to her status in the hospital as an improper committee. Although there are informal policies regarding the monitoring of conditionally discharged patients, neither the civil commitment rule, R. 4:74-7(g), nor any court decision, provides procedural guidelines for the review of conditional discharges. The purpose of this opinion is to resolve the motion in the matter of B.H. and to provide guidelines of patients' conditional status which protect their due process rights.
B.H. was admitted to Lakeland on November 4, 1985 on a class B civil commitment. She was conditionally discharged at a hearing held on November 15, 1985, effective November 18, 1985. The conditions of discharge were attendance at Jefferson House, an outpatient clinic, and the taking of prescribed medication. A 60-day discharge review was ordered to be scheduled by January 18, 1986, but, due to an oversight in the county adjuster's office, it was not scheduled until March 14, 1986. Her case worker's written report of March 10, 1986 recommended a continuation of the conditional release since B.H. was non-compliant with scheduled clinic appointments and obtaining medication.
However, before the scheduled hearing, B.H. was returned to Lakeland under emergent conditions. No notice was given to the court or to B.H.'s counsel and no written report of the circumstances of her return was filed.
Laura Abrams, Director of the Crisis Center at Our Lady of Lourdes, later reported to the court that B.H. was brought there by an ambulance called by her case manager and by an outpatient counselor at Camcare. The case manager believed that when conditionally discharged patients are decompensating *148 and/or non-compliant, they should be brought to a crisis center for recommitment.
B.H. stayed at the crisis center for approximately one hour. She was not seen by a doctor, but only by a crisis worker. Abrams stated that she heard B.H. tell the crisis worker that she was hearing voices and wanted to kill herself. Abrams also stated that B.H. voluntarily agreed to return to Lakeland Hospital because she was not "feeling well." The hospital chart indicates that the case manager attempted to contact the court during the lunch hour, but was unsuccessful.
When B.H.'s case worker was told by the crisis center personnel that recommitment or Class B commitment papers were not necessary for a conditional discharge violation, she drove B.H. to Lakeland Hospital in her car. The case worker and the crisis center personnel were unaware that B.H.'s conditional discharge period was beyond the 60 days set by the court.
Due to B.H.'s summary return to Lakeland Hospital on March 11, 1986, the March 14, 1986 hearing was rescheduled for March 27. On that date, B.H.'s doctor at Lakeland submitted a written report recommending that the commitment be continued, but updated the report with testimony recommending a six-month conditional release. The Public Advocate moved to have B.H. discharged unconditionally on the grounds that the State's application for a further conditional release was not properly before the court because B.H.'s previous commitment had expired. Counsel's motion was denied, and B.H. was conditionally released, with a review scheduled in six months.
On April 7, the Public Advocate filed this motion for an order vacating the conditional release order dated March 27, and discharging B.H. from commitment, or, alternatively, for an order reopening the record and entering a modified conditional release order.
Movant's position is that the court lacks jurisdiction to conditionally release B.H. because the November 15, 1985 order had expired before her return to Lakeland and before the March 27, *149 1986 hearing. The Public Advocate argues that the conditions set forth in the November order do not automatically continue indefinitely, but only until the next review hearing. Since the State failed to schedule a review date within the two months required by the November order, that order expired as a matter of law.
Further, the Public Advocate argues that, even if the conditional release automatically continued, B.H. should not have been summarily returned to Lakeland by the case worker. Whether or not to revoke the conditional discharge is a judicial decision. In this case, there was no notice to the court, to counsel or to B.H., nor any hearing on the revocation of her release. Counsel argues that conditional release status is a liberty interest which cannot be revoked without due process. As a remedial action, counsel asks the court to articulate procedural guidelines to prevent another revocation of a court-ordered conditional release status without due process.
Counsel for the county has taken no position in this matter. This court agrees that procedural guidelines are necessary to protect patients' due process rights and assure the uniform handling of alleged violations.
The rule governing conditional discharge is R. 4:74-7(g), which provides:
Judgment of Release. A judgment discharging the patient may contain in appropriate circumstances conditions for the release such as attendance at a non-residential mental health facility or other form of supervision. Any such conditions shall be stated in the order of discharge with particularity. The continuation of any such conditions shall be subject to periodic review as provided by paragraph (f) hereof.
Paragraph (f) supplies time limitations for periodic reviews, and states that "all reviews shall be conducted in the manner required by paragraph (e)," which governs commitment hearings. R. 4:74-7 does not specifically address conditional discharge reviews, and neither that rule, nor any New Jersey court decision provides procedural guidelines for the adjudication of alleged violations of conditions.
*150 In State v. Carter, 64 N.J. 382 (1974), the New Jersey Supreme Court discussed the circumstances when a conditional discharge is appropriate and the necessity of judicial monitoring of the conditionally discharged patient: "The success of conditional release depends, to a large extent, upon the adequacy of the supervisory controls imposed by the courts to insure public safety." Id. at 403. The Carter Court did not outline specific procedures for determining whether the patient is complying with the imposed conditions, but recommended that jurisdiction be retained for review of the case:
Throughout the period of conditional release, it is imperative that the trial court maintain frequent contact with the patient and supervsing [sic] psychiatrist. To facilitate this burden of responsibility, the trial judge should require regular and continuous reports to a court appointed probation officer both from the psychiatrists to whom the patient is reporting and from the patient himself. The court must retain jurisdiction over the proceeding. This retention of jurisdiction is essential to enable the authorities to return the patient to the state hospital for psychiatric care immediately upon being notified that some problem has arisen which jeopardizes the safety and well being of the patient or those around him. [Id. at 408.]
The Carter opinion implies that only the trial judge may revoke the conditional discharge. Carter also states that the trial judge may recall the patient "in a summary fashion," but a number of federal court decisions have held that the revocation of conditional discharge without notice and a hearing is unconstitutional. See Doughterty, J.D., "Right to Notice and Hearing Prior to Revocation of Conditional Release Status of Mental Health Patient," 29 A.L.R.4th 394 (1984) and Note, "Constitutional Law: The Summary Revocation of an Involuntary Mental Patient's Convalescent Leave  Is It Unconstitutional?" 33 Okla.L.Rev. 366 (1980).
These federal cases rely on Morissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), where the United States Supreme Court held that persons conditionally released in the parole context could not have their parole revoked without certain minimum procedures. The Court held that the "conditional liberty" of paroled criminals is within the scope of the Fourteenth Amendment, and protected by the Due Process *151 Clause. Analogizing mental patients' conditional release status to parole situations, the court in Meisel v. Kremens, 405 F. Supp. 1253 (E.D.Pa. 1975) held unconstitutional a statute which allowed the director of a mental health facility to summarily revoke a patient's outpatient or convalescent leave. In Lewis v. Donahue, 437 F. Supp. 112 (W.D.Okla. 1977), the court held unconstitutional the reinstitutionalization of a person who had been placed on outpatient status. That patient was reinstitutionalized pursuant to a court order issued without a hearing. More recently, in Birl v. Wallis, 619 F. Supp. 481 (D.C.Ala. 1985), the court held unconstitutional a statute which allowed the reconfinement of patients, released on a trial visit, without due process protection. Birl had been reconfined by a psychiatrist upon the recommendation of an outpatient clinic.
In Lewis, the court merely held that statute unconstitutional, and declined the parties' invitation to outline procedures which would satisfy due process. Lewis, supra, 437 F. Supp. at 114. Neither the Meisel nor the Birl court outlined procedural guidelines, but provided the parties an opportunity to propose procedures, which the court would examine to determine whether they provided due process or required alterations. Meisel, supra, 405 F. Supp. at 1258; Birl, supra, 619 F. Supp. at 493.
In this case, the Public Advocate has requested the court to articulate procedural guidelines for the review of conditional discharges, to prevent due process violations such as that which is alleged to have occurred in B.H.'s case. Due to the uncertainty exhibited on the part of the caseworkers who reconfined B.H. regarding the procedure to be followed in cases where conditions of discharge are allegedly violated, it is desirable for the court to articulate appropriate procedural guidelines in the context of ruling on counsel's motion.
The New Jersey Supreme Court has established procedural guidelines for the periodic review of commitments, State v. Krol, 68 N.J. 236 (1975), State v. Fields, 77 N.J. 282 (1978), and, more recently, for the review of discharged pending placement *152 status, In re S.L., 94 N.J. 128, 135 (1983). These cases provide that the patient has the right to receive notice of the commitment or placement hearing, to present evidence, and to be represented by counsel. See id. at 142. Similar procedures should be available for conditional discharge reviews. However, in articulating procedural guidelines for the review of conditionally released patients, it is necessary to distinguish between cases where the patient is allegedly not complying with some conditions which do not require immediate action, and cases like B.H.'s which arise under emergent conditions. In the latter situation, there is less opportunity for resorting to the court. I, therefore, hold that the following procedures should be followed by the case managers of conditionally discharged patients.
If a patient is not meeting the conditions of her or his discharge (i.e., not attending the outpatient program or not taking the prescribed medication) the case manager should write a report to the court and contact the county adjuster's office to schedule a review within two weeks. The county adjuster will then schedule a conditional release review hearing, providing notice to all parties including the Public Advocate. At the hearing, the patient will have the right to introduce evidence that she or he is complying with the conditions, and to crossexamine adverse witnesses.
There are situations where it may not be possible to follow the above procedures. For example, if a patient is completely uncooperative and decompensating, becoming a danger to herself/himself or the community, there may not be sufficient time to schedule a review hearing.
In such emergent conditions, like the case of B.H., the case manager must take the patient to a crisis center, where she or he must be examined by a doctor. Depending on the situation, the court may issue a warrant so that the patient may be taken to the crisis center. The doctor will examine the patient, completing a report certifying that because the patient has *153 become dangerous it is necessary to reconfine the patient. The caseworker must notify the Public Advocate and the court of the situation and the doctor's opinion, by telephone, if necessary. The court will then determine, based on the doctor's report, whether the patient should be reconfined. If the patient is reconfined, a hearing will be scheduled at the next hearing date for the particular hospital.
This is not the procedure that was followed in the case of B.H. This patient was brought to Our Lady of Lourdes crisis center where she was not seen by a doctor, but by a crisis worker. She was then taken to Lakeland Hospital without notice to the court or to the Public Advocate. This summary revocation of B.H.'s conditional discharge status by recommitment, although done under emergent conditions, constitutes a violation of her due process rights since it was not done by court review. In fact, the court may have decided that B.H.'s conditional discharge had expired and that she should have been recommitted pursuant to N.J.S.A. 30:4-25 et seq. and R. 4:74-7.
The Public Advocate has moved to vacate the conditional release order of March 27, 1986, or, alternatively, for an order reopening the record and entering a modified conditional release order. Counsel argues that the conditional release should not extend for six months, and that the order should not specify the medication the patient must take. The March 27 order provides that the patient "must get her prolixin medication every two weeks." The Public Advocate argues that the order should not specify the medication, but allow the physician to make changes in the medication without needing to resort to the court for a modification of the order.
This court agrees that a conditional discharge order should not extend for more than 90 days. R. 4:74-7(g) provides that conditional releases are to be reviewed in the same manner as inpatient commitments, R. 4:74-7(f). Paragraph (f) provides for no more than three-months review from the date of judgment. *154 Public Advocate's motion to rescind the conditional discharge is denied. B.H.'s need for commitment was consistent with the test for dangerousness to self even though procedurally flawed. Counsel's motion to change the order to provide a 90-day review and to delete the specification of medication is granted.
Counsel will submit a modified order.